**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 25, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JOSEPH EDWARD McCONNEL,

      Defendant - Appellant.

No. 03-6345

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CR-02-009-M)**

---

Edward J. Kumiega, Assistant United States Attorney, (Robert G. McCampbell, United States Attorney, and Mark A. Yancey, Assistant United States Attorney, with him on the brief) Oklahoma City, Oklahoma, for the Plaintiff-Appellee.

Michael Johnson, Oklahoma City, Oklahoma, for the Defendant-Appellant.

---

Before **EBEL, HOLLOWAY** and **TYMKOVICH**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

      Defendant-appellant Joseph Edward McConnel was convicted by a jury of four counts arising from his sales of firearms. The indictment alleged these offenses: Count 1, dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A); Counts 2 and 3, selling firearms to a person previously convicted of a felony in violation of 18 U.S.C. §

922(d)(1)&(3); and Count 4, possession and transfer of semi-automatic assault weapons in violation of 18 U.S.C. § 922(v)(1).[1] Defendant was sentenced to 71 months' imprisonment, consisting of concurrent terms of 60 months on Count 1, 71 months on Count 2, 71 months on Count 3, and 60 months on Count 4. The district court also imposed a fine of ten thousand dollars and a special assessment of four hundred dollars.

Defendant McConnel now brings this direct appeal from his conviction and sentence. Jurisdiction in this court is granted by 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

# I
## *Background*

Defendant, who had been an attorney before his license was suspended, was self-employed as a private investigator. One attorney for whom he worked regularly and with whom he had an especially close relationship was Charles Holdstock. One of Holdstock's clients was a motorcycle gang member named George Schuppan. Schuppan and defendant McConnel had been introduced by Holdstock sometime in December 2000. At trial, McConnel testified that Schuppan had been introduced as a friend, not a client. The government's evidence had at least suggested that McConnel may have known otherwise.

Schuppan, who had at least once previously been convicted of a felony, had been arrested for possession of a firearm and drugs in September 2000 in Caddo County,

---

[1]Subsection (v) of section 922 was enacted in 1994 to apply for a period of ten years. Pub.L. 103-322, Title XI, § 110105(2), 108 Stat. 2000. Thus, it expired of its own terms in 2004. No argument is made that this affects the validity of the judgment in this case, nor do we question that the judgment remains valid in spite of this change in the law.

Oklahoma. In January 2001, officers served a federal search warrant at Schuppan's home, finding more guns and equipment for manufacture of methamphetamine. Schuppan agreed to cooperate with the authorities and said that defendant McConnel was one of his suppliers of guns.

Federal officers from the Bureau of Alcohol, Tobacco and Firearms (ATF) decided to pursue Schuppan's information about defendant McConnel and to use Schuppan to attempt to make undercover gun purchases from McConnel. The officers arranged to have Schuppan make a phone call to McConnel, which was recorded, in which he told defendant McConnel that he wanted to buy some more guns because he had some "brothers" (allegedly meaning fellow gang members) coming from out of town who had "to take care of a little situation." Schuppan told defendant that he, Schuppan, could not sign papers for gun purchases because he was a convicted felon. Defendant indicated that would be no problem, saying "I've got you covered in spades."

Later that day, Schuppan went to McConnel's office and purchased five guns and some ammunition for $1,750. Schuppan was wearing a recording device to tape record the conversation, but the attempt failed. Defendant testified at trial that in this personal meeting, before the guns were sold, Schuppan had told him that he was not a felon and that he had made the statements on the telephone just to impress someone else who had been listening to the conversation from Schuppan's end.

A second transaction occurred in February 2001. Schuppan again purchased several guns from defendant McConnel, using ATF money. Two of the guns involved in this sale

were the illegal semi-automatic assault weapons that were the subject of Count 4 of the indictment. Later that month, another search warrant was served on Schuppan's residence, which resulted in discovery of a methamphetamine lab and ten more guns, including the two semi-automatic assault rifles. The government adduced evidence at trial that all of these guns had been supplied by defendant "on consignment" after the previous raid had resulted in seizure of all the guns Schuppan had earlier. Schuppan was taken into custody for violating his cooperation agreement by committing other crimes and remained in custody through trial of the instant matter.

On the same day that the second search warrant had been executed at Schuppan's residence and while he was in custody, Schuppan made a second recorded call to defendant McConnel in which he discussed making payment arrangements for the guns he had bought. Prices for specific guns, including the assault rifles, were discussed. The two agreed that Schuppan's girlfriend, Emma Jean Moore, would bring payment to defendant. Two days later, March 1, 2001, Moore made a recorded call to defendant to set up a meeting. Soon afterward, defendant came to Moore's residence (where Schuppan had also been living prior to being taken into custody). With an agent hiding in another room, defendant sold Moore three more guns. About two weeks later, Moore went to defendant's office accompanied by an undercover agent posing as her cousin. Moore paid defendant over $2,000 as the balance Schuppan owed on previous purchases. As directed by the ATF agents, Moore requested a list of weapons that Schuppan had obtained from defendant, and defendant complied, giving Moore a handwritten list.

Almost two months later, authorities executed search warrants on defendant's home, car and office. At the home, agents recovered notebooks and other papers about gun sales and seven guns with price tags on them. Defendant's car, which was parked outside the home, contained ten more guns, some with price tags, and magazines about guns, a "Bluebook of Gun Values," and other evidence.

Defense evidence included the admission by the government's evidence custodian that none of the guns seized from defendant's home or car was illegal; that much of the evidence was consistent with gun collecting; and that no license is necessary to participate in gun shows. Defendant testified that he was merely a collector; that he had met Schuppan through attorney Holdstock, who introduced Schuppan as a friend, not a client; and (as already mentioned) that after the recorded telephone conversation in which Schuppan had said that he was a convicted felon, Schuppan had later said otherwise.

## II
*Alleged juror dishonesty during voir dire*

During *voir dire* all jurors were asked if they had "ever been involved in any court, in any criminal matter" concerning themselves or close relatives in which they had been a defendant, witness or victim. The person who later became foreman of the jury, J.L., did not respond, although he once had been charged with several felonies. After trial defendant learned of the jury foreman's previous indictment for fraud and moved for a new trial. Defendant now argues on appeal that the district judge abused her discretion in denying the motion.

In his motion for a new trial, defendant pointed out that J.L. had been indicted in state court on three counts of fraud and one count of perjury in 1987. The indictment against J.L. had been dismissed, and he had then been charged by information with five counts based on basically the same allegations. Those charges were dismissed at preliminary hearing and no other charges were filed. Defendant alleged that J.L. had intentionally failed to disclose these facts.

The trial court held a hearing on defendant's motion for a new trial, at which jury foreman J.L. testified. He testified that he did not specifically remember the above quoted question having been asked during *voir dire*, but if asked again he would not respond, explaining that his thinking was that he had not been "involved in any court" because the charges had been dismissed before trial. The district judge found that the juror was credible and candid. Not only did she find that the juror sincerely believed that the *voir dire* question applied only to matters that went to trial, but she further found that this belief was reasonable, even though mistaken. The court concluded that the juror had not actually been biased. The judge also concluded that she could not find implied bias, citing the very different circumstances of the charges against defendant and the fraud charges that had once been brought against the juror.

Our standard of review for the denial of a motion for a new trial is abuse of discretion. *See, e.g., Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 514 (10th Cir. 1998). The district court's finding that the juror testified credibly about the matter is reviewed only for clear error. *See Gonzales v. Thomas*, 99 F.3d 978, 985 (10th Cir. 1996). Our analysis will

consider whether the facts show that the juror had an implicit bias, which we review *de novo*. *See Skaggs*, 164 F.3d at 517.

Defendant is entitled to a new trial if he can show that the juror failed to honestly answer a material question on *voir dire* and that a correct response would have provided a valid basis for a challenge for cause. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).[2] We conclude that defendant cannot establish either of these two prerequisites for the relief he seeks.

First, as noted the district judge found that the juror's answer (or non-answer), although mistaken, was not dishonest. Defendant attempts to show that this finding was clearly erroneous by arguing that the question was unambiguous and that the juror was an educated man who had formerly held an important position in Oklahoma higher education. Therefore, defendant contends, the juror's failure to answer the clear question by revealing that he had faced criminal charges in the past must have been dishonest. Defendant further contends that the dishonesty alone shows bias, relying on *Burton v. Johnson*, 948 F.2d 1150, 1158 (10th Cir. 1991).

We are not persuaded. Defendant's argument does not meet the very high standard of showing that the district judge's finding of mistake on the part of the juror, rather than dishonesty, was clearly erroneous. Moreover, we reject defendant's contention that dishonesty alone would be sufficient. We have previously noted that to hold that bias can

---

[2]We have observed that the reasoning concerning questions of juror bias under the Sixth Amendment in criminal cases is germane to the analysis in civil cases under the Seventh Amendment. *Skaggs*, 164 F.3d at 515 n.2.

be inferred solely from a dishonest response during *voir dire* would in effect do away with the second prong of *McDonough*. *Skaggs*, 164 F.3d at 517. Indeed, this case well illustrates why we were correct to have rejected the same argument in *Skaggs*. This is because of the marked difference between the charges that were once brought against juror J.L. and the charges facing Mr. McConnel. In these circumstances, the juror's experience might have led, if anything, to a bias against the prosecution. *See United States v. Ross*, 263 F.3d 844, 847 (8th Cir. 2001). We note, also, that *Burton* is not to the contrary. That case did not hold that, as a general rule, bias may be inferred merely from the fact that a prospective juror answered dishonestly during *voir dire*. Instead, it was only the close similarity in circumstances between the issues to be tried and the juror's undisclosed experiences in *Burton* which supported the inference of bias.

By contrast, even where the issues were more closely related than they are in the instant case, we have declined to infer juror bias. In *Gonzales v. Thomas*, 99 F.3d 978 (10th Cir. 1996), no bias, actual or implied, was found in circumstances that should have provided a stronger basis for the defense's argument. In *Gonzales*, the juror in question had been a rape victim 24 years earlier, and the prosecution there was for rape and armed robbery. Nevertheless, despite some similarities in the types of cases, this court held that the juror did not show actual bias, nor had she deliberately concealed her experience during *voir dire*. The *McDonough* test is "directed at intentionally incorrect responses," the panel in *Gonzales* said. 99 F.3d at 984. The court there also found no implied bias. If a rape victim can be an impartial juror in a rape prosecution, then surely juror J.L., whose experience was having

been charged with embezzlement and fraud and against whom the charges had been dismissed, could be an impartial juror for the trial of this weapons case.

Finally, we note that defendant does not allege actual bias, relying solely on his argument that bias should be implied or presumed here. We have noted that the *McDonough* framework is not the exclusive means for showing that a party has been denied a fair trial because of the participation of a biased juror. *See Skaggs*, 164 F.3d at 516; *Gonzales*, 99 F.3d at 985. But because Mr. McConnel has not attempted to show any circumstances other than the allegedly dishonest *voir dire* answers and relies solely on *McDonough*, we need not go further in our analysis here.

### III
*Alleged error in giving jury instruction on deliberate ignorance*

Defendant contends that he was denied a fair trial in violation of his due process rights because the trial court erroneously gave what is known as a deliberate ignorance instruction, which as seen *infra* permits the jury to infer defendant's knowledge of a critical fact from evidence that the defendant purposely avoided information relevant to that fact.

We review jury instructions as a whole to determine whether they adequately state the applicable law, and review *de novo* whether a particular instruction is proper. *United States v. Hanzlicek*, 187 F.3d 1228, 1233 (10th Cir. 1999).[3] However, in this case we find that the alleged error has been forfeited. At trial, defendant only objected to the instruction as to

---

[3]We have noted some discrepancy in our statements on the applicable standard of review. *United States v. Delreal-Ordones*, 213 F.3d 1263, 1264 n.2 (10th Cir. 2000). As in that case, we need not attempt to resolve the apparent conflict because in this case we must apply the plain error standard.

Count 4. Therefore, the alleged error in giving the instructions as to all other counts can only be reviewed for plain error. Fed. R. Crim. P. 30(d). As to Count 4, where an objection was properly made at trial, the alleged error has been waived by failure to brief the issue.[4] *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994). Consequently, we consider only whether the trial court committed plain error in giving the instruction as to Counts 1 through 3. "This court has discretion to recognize plain error that was not raised in the district court when (1) there is an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Lawrence*, 405 F.3d 888, 906 (10th Cir.), *cert. denied*, 126 S.Ct. 468 (2005) (citing *United States v. Cotton*, 535 U.S. 625, 632-32 (2002)).

The nature of these counts requires us to analyze the issue separately as to Count 1, which charged dealing in firearms without a license, and as to Counts 2 and 3, which charged that defendant on separate occasions had sold firearms to Schuppan, knowing or having reasonable cause to believe that Schuppan had been previously convicted of a felony or was under indictment for a felony. As to Count 1, such knowledge is not an element of the offense of dealing in firearms without a license, and thus a deliberate ignorance instruction would be, on its face, inapplicable to that count. As to Counts 2 and 3, however, it is an element of the offense that the defendant "knowingly" transferred firearms to a person whom

---

[4]Counsel presented the issue as to Count 4 vigorously at oral argument, but we believe we must follow our waiver rule and decline to consider the issue; it would be unfair to the government for us to decide the issue without having the benefit of the government's briefing on it.

-10-

he knew or had reason to believe could not lawfully possess firearms because of a past felony conviction or a pending felony charge. Thus, the deliberate ignorance instruction could, under the right circumstances, be applicable to those counts.

It is undisputed that the instruction given was, by absence of any limiting language, applicable to all counts. The instruction stated:

> You may find that a defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

I ROA Doc. 60, Instruction 41.

We have cautioned that an instruction on deliberate ignorance is only appropriate in rare circumstances. *Hanzlicek*, 187 F.3d at 1233. Defendant contends that it was improper to give the instruction as to Count 1 in this case, citing *United States v. Covington*, 133 F.3d 639, 644 (8th Cir. 1998), for the proposition that it is error to give a generally applicable deliberate ignorance instruction. The government asserts that *Covington* is distinguishable because it dealt with an instruction that was erroneously given because it was properly applicable to only one of several defendants, unlike the circumstances here. But that difference is not significant. We agree with defendant on the general proposition that a deliberate ignorance instruction should not be given without language limiting it to a specific count or counts, unless the elements of the offense and the evidence support its application to all counts. This is almost a tautology: The instruction should be given only where proper. And because knowledge was not an element of Count 1, the court should have made clear

to the jurors that the instruction was not applicable to that count. Therefore, we conclude that defendant has satisfied the first two requirements for plain error review by showing that there was error and that the error was plain.

We find it a much closer question whether defendant has shown that the error affected his substantial rights. As the government notes, the jury was correctly instructed that the necessary mental element for Count 1 was wilfulness, and that term was appropriately defined. In *Hanzlicek* we adopted the reasoning of *United States v. Stone*, 9 F.3d 934, 937-42 (11th Cir. 1993), to reach the conclusion that error in giving a deliberate ignorance instruction is harmless if the prosecution presented sufficient evidence of actual knowledge. While that precise holding in the circumstances of the instant case might apply to Counts 2 and 3 but does not apply to Count 1, we think that the rationale underlying that holding does apply to Count 1. We need not here recite that rationale in detail. We simply observe that the reasoning we adopted there was based on the premise of jury competence to "disregard an option simply unsupported by the evidence." *Stone*, 9 F.3d at 939 (quoting *Sochor v. Florida*, 504 U.S. 527, 538 (1992)). Thus, we concluded in *Hanzlicek*, as the Eleventh Circuit had in *Stone*, that it is reasonable to presume that jurors will scrutinize the evidence, realize when a deliberate ignorance instruction has no factual support, and not base a verdict on the erroneously given instruction. For this reason, we have considerable doubt whether under the specific circumstances it is reasonable to believe that the defendant was prejudiced by the instruction. Because knowledge was not an element of Count 1, the instruction may have caused some confusion as the jurors deliberated that count, but common sense would

lead the jurors to realize that the instruction simply had no application to the question whether the defendant had unlawfully engaged in the business of selling firearms without a license.

In any event, we need not decide whether the error in not informing the jury that the instruction applied only to the other counts affected a substantial right of the defendant because we conclude that defendant cannot satisfy the fourth element of the plain error standard. Because we do not think it very likely that the jurors were actually led astray by what was, as to Count 1, a merely extraneous and irrelevant instruction, the error did not seriously affect the fairness of the trial.

As to Counts 2 and 3, which charged Mr. McConnel with selling a gun to a convicted felon, we find no error, and certainly no prejudice. The jurors heard a recording of a telephone conversation in which Schuppan told defendant that Schuppan was a convicted felon. Obviously, this evidence was sufficient to support the requisite finding of knowledge on these counts, and under *Hanzlicek*, any error in giving the deliberate ignorance instruction was harmless, given this evidence of actual knowledge. But there was no error.

As to counts 2 and 3, the instruction was properly given because defendant denied knowledge and there was evidence to show that he may have engaged in deliberate acts to avoid actual knowledge. *See United States v. Delreal-Ordones*, 213 F.3d 1263, 1268 (10th Cir. 2000). As noted, the evidence showed that Schuppan told defendant directly that he was a felon. Defendant in his testimony said that Schuppan later told him that had been a lie. Accepting for purpose of this argument that defendant testified truthfully (and of course

defendant so argues), these conflicting statements on the point are enough to support the decision to give the instruction. Defendant had experience as a criminal defense lawyer (before he was disbarred) and as a private investigator (and self-described "professional snoop"). Schuppan admitted to defendant that he was a felon. Then he denied it, if we assume defendant's testimony to have been truthful, which we must assume for this issue to have any meaning. Faced with these contradictory statements, defendant chose not to look further. And that meant ignoring the first statement, the admission. We see no error in letting the jury decide whether only a person who did not want to know the truth could accept the second statement and ignore the first without any further inquiry.

Even if this was error, it is not plain error for the reasons we have given.

## IV
### *Impeachment evidence*

At trial, as the discussion *supra* suggests, the jurors were presented with conflicting accounts from Mr. McConnel and from the government's key witness, Mr. Schuppan, on some of the important events underlying the charges. Mr. McConnel argues that he was unfairly prejudiced in this credibility battle by the trial judge's decision to permit the government to introduce as impeachment evidence the fact of his prior conviction on two misdemeanor charges.

Mr. McConnel had been admitted to the Oklahoma Bar in 1968. In 1985 he had been suspended from the bar for four years following his federal conviction on two misdemeanor counts of using tax information for purposes other than preparation of tax forms. The IRS

investigation showed that defendant had paid his lower income clients an advance on their pending tax refunds in exchange for a percentage of the refund. In implementing this scheme, defendant had clients sign power of attorney forms and, in some cases, blank tax returns. The convictions came as the result of a plea bargain, pursuant to which it appears that other more serious charges may have been dropped.[5]

At trial in the instant case, the government filed a notice of intent to use defendant's prior convictions as impeachment evidence should defendant choose to testify. This notice was required under Fed. R. Evid. 609(b) because the convictions were more than ten years old.[6] The defendant filed an objection and the court ruled that the convictions would not be

---

[5]*See In re McConnel*, 868 P.2d 471, 472, 473, 476 (Okla. 1994), in which Mr. McConnel's petition for reinstatement to the bar was denied. McConnel never was reinstated with the Oklahoma Bar.

[6]That rule provides, in pertinent part:

Impeachment by Evidence of Conviction of Crime

(a) General rule. For the purpose of attacking the credibility of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

(b) Time limit. Evidence of a conviction under this rule is not admissible if

admitted under Rule 609.  Later during the trial, the government filed a motion to admit

evidence of the underlying conduct and the bar suspension, but not the convictions

themselves, under Fed. R. Evid. 608.[7]  Although counsel for the government specifically said

that the government was not seeking to admit evidence of the convictions with this second

argument, in granting the government's motion in a ruling from the bench, the district judge

said that evidence of the convictions would be allowed.  In response to this ruling, no doubt

---

a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.  However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Fed. R. Evid. 609.

[7]That rule provides, in pertinent part:

Evidence of Character and Conduct of Witness

. . . .

(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Fed. R. Evid. 608(b).

as a matter of trial strategy, defendant admitted the bar suspension and the underlying misdemeanor convictions on direct examination.

Ordinarily we review decisions to admit or exclude evidence under the abuse of discretion standard. *E.g., United States v. Davis*, 40 F.3d 1069, 1073 (10th Cir. 1994). But the government argues that in this instance the defendant has waived his right to object to the trial judge's ruling by opting to introduce the evidence himself. We agree.

In *Ohler v. United States*, 529 U.S. 753 (2000), the Court held that a criminal defendant's tactical decision to introduce evidence of his prior conviction waives the right to appeal the district court's ruling that the prosecution could use the evidence as impeachment on cross-examination. Although that case was decided under Rule 609 and this case arises under Rule 608(b), the government contends that the waiver principle should apply under both rules in the same way. We conclude that the extension of the waiver rule of *Ohler* from Rule 609 to Rule 608(b) is compelled by logic because the issues are virtually indistinguishable in their substance.[8]

## V
### *Sentencing issues*

Mr. McConnel contends that his Sixth Amendment rights were violated when the

---

[8]We note that Mr. McConnel argues that the government's tactic was a circumvention of Fed. R. Evid. 609(b) and its more specifically applicable provisions. We are aware of some cases on the interplay between Rules 608 and 609. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 751-54 (3d Cir. 2000); *United States v. Hurst*, 951 F.2d 1490 (6th Cir. 1991); *State v. Hoverson*, 2006 ND 49, 710 N.W.2d 890, 895-898 (N.D. 2006). We do not reach the merits of the issue and express no opinion on whether Rule 609, as the more specifically applicable rule, precludes admission of evidence of underlying conduct under Rule 608(b).

district court, following the Guidelines promulgated by the United States Sentencing Commission, made findings of fact at the sentencing stage which resulted in a longer term of confinement than he otherwise would have been subject to under the Guidelines. Sentencing took place before the landmark decision of *United States v. Booker*, 543 U.S. 220 (2005), but defendant raised this argument below, relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000). As *Booker* has made clear, a criminal defendant's right to trial by jury is violated when a district court bases sentencing decisions *in a mandatory Guidelines system* on facts found by the court instead of the jury. We have recognized two kinds of *Booker* error, constitutional and non-constitutional. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005) (en banc). The errors alleged here are constitutional. As a result, the burden is on the government to show that the errors were harmless beyond a reasonable doubt. *See United States v. Riccardi*, 405 F.3d 852, 875 (10th Cir.), *cert. denied*, 126 S.Ct. 299 (2005).

Mr. McConnel contends that the district court made three fact findings at sentencing that resulted in increasing his offense level, and thus increased his punishment in violation of the Sixth Amendment and the holding in *Booker*. First, the district court increased defendant's offense level by four under USSG § 2K2.1(b)(1)(D)[9] based on a finding that his offense involved 20 firearms (the court denied the government's request for a finding that over 60 guns were involved in the offense, which would have resulted in a 6 level increase). But that provision applies to a quantity of 13-24 firearms. The indictment alleged 16

---

[9]The district judge used the 2000 edition of the Guidelines Manual.

firearms, and the jury verdict on Counts 2 and 3, involving specific sales to Mr. Schuppan, the government informant, included a finding that a total of 16 firearms had been sold on those occasions. Therefore, the trial court's finding of 20 firearms, instead of only 16, did not increase the offense level and so had no effect on the sentence. We need not consider this contention further. *See United States v. Corchado*, 427 F.3d 815, 820-21 (10th Cir. 2005), *cert. denied,* 126 S.Ct. 1811 (2006) (no constitutional *Booker* error occurs where judicial fact-finding did not enhance the actual sentence); *United States v. Yazzie*, 407 F.3d 1139, 1144 (10th Cir.), *cert. denied,* 126 S.Ct. 303 (2005) (same).

The district judge also increased Mr. McConnel's offense level by two for obstruction of justice under USSG § 3C1.1 based on her finding that he had committed perjury. Finally, the court increased his criminal history score from I to II based on a finding that defendant had sold another gun after his conviction in this case, while awaiting sentencing. These findings were made by the judge by a preponderance of the evidence. After making these findings, the court sentenced the defendant to 71 months, the top of the resulting guideline range. Because these findings by the court do appear to have affected the ultimate sentence, these were constitutional *Booker* errors.

We briefly review the evidence and findings regarding these two enhancements. As we have discussed, to support Count 2 and Count 3, the government was required to show that defendant sold guns to Schuppan knowing or having reason to believe that he was a convicted felon or had felony charges currently pending. The government produced evidence in the form of Schuppan's testimony and the recorded telephone call setting up the

first sale of firearms from defendant to Schuppan to show that defendant was told that Schuppan was a convicted felon. In his defense, Mr. McConnel testified that Schuppan had later told him otherwise. The district judge found that Mr. McConnel had committed perjury by so testifying.

The other sentencing enhancement was based on defendant's sale of a gun after his conviction and while awaiting sentencing in this case. At the sentencing hearing three witnesses testified that defendant sold a pistol to one of them in August or September of 2002 (approximately two months after the trial had ended in guilty verdicts). At that time, because of his conviction, defendant was barred from possessing firearms.

Although the district court's enhancement of defendant's sentence based on facts found by the court under the preponderance of the evidence standard *under the mandatory Guidelines* regimen that existed prior to *Booker* violated the defendant's Sixth Amendment rights, our cases applying *Booker* have endorsed an approach that is built on the same foundation. We have instructed the district courts that they should begin the sentencing process with the same procedures, calculating the applicable Guidelines range through the same process – including findings by the court under the preponderance of the evidence standard – but with the recognition that the Guidelines are now advisory only and that calculating the Guidelines range is not the conclusion of the process. *See United States v. Kristl*, 437 F.3d 1050, 1053-54 (10th Cir. 2006).

Accordingly, we have found constitutional *Booker* errors to be harmless beyond a reasonable doubt where the record convinces us that remand would be futile. For example,

we have held that where the district court exercised its limited discretion under the mandatory Guidelines system to impose the most severe punishment lawful under the circumstances of the case, there is no reason to believe that the court would exercise its now greater discretion to be more lenient towards the defendant. *See United States v. Waldroop*, 431 F.3d 736, 742-43 (10th Cir. 2005).

Here we are faced with two *Booker* errors, the perjury finding and the finding that defendant committed another violation while awaiting sentencing. The district judge made a detailed, written statement of the reasons for her decisions. She found specifically that the offense committed after conviction showed contempt for the judicial system.

The record shows that the judge used the limited discretion available to her pre-*Booker* to reach the highest sentence she could because of her view of the seriousness of the offenses and the likelihood of recidivism shown by the contemptuous act following conviction. That discretion "is the same sort of flexibility in sentencing that judges now possess in a post-*Booker* scheme." *United States v. Cunningham*, 405 F.3d 497, 504 (7th Cir. 2005). There is thus "no reason to think the judge would exercise [her] now greater discretion to reduce the sentence." *United States v. Riccardi*, 405 F.3d 852, 876 (10th Cir.), *cert. denied,* 126 S.Ct. 299 (2005). Accordingly, we conclude that the *Booker* errors were harmless beyond a reasonable doubt.

The judgment and sentence are therefore AFFIRMED.