2011 WY 77

**Henry R. SANCHEZ, a/k/a Ricky Sanchez, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

Nos. S–09–0113, S–10–0044.

Supreme Court of Wyoming.

May 5, 2011.

Representing Appellant: Diane Lozano, State Public Defender; Tina Kerin, Appellate Counsel; Kirk A. Morgan, Assistant Appellate Counsel; Wyoming Public Defender Program; Timothy C. Kingston of the Law

Office of Tim Kingston, LLC, Cheyenne, Wyoming. Argument by Mr. Kingston.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Senior Assistant Attorney General. Argument by Ms. Pojman.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] A jury found Appellant Henry R. Sanchez guilty of attempted second degree murder, aggravated assault and battery, felony possession of a controlled substance, and interference with an emergency call. Sanchez later sought a new trial, which the district court denied. Sanchez appealed both the judgment and sentence and the denial of his new trial motion, and we consolidated those appeals. Finding no reversible error in any of the issues presented on appeal, we affirm.

### ISSUES

[¶ 2] Sanchez offers these issues in his opening brief:

I. Did the district court err when it denied Appellant's motion for judgment of acquittal, for lack of sufficient evidence, on the possession of a controlled substance charge?

II. Did the [district] court err when it allowed in prejudicial hearsay testimony under W.R.E. 803(2)?

III. Did the [district] court violate Appellant's constitutional right to be presumed innocent and invade the province of the jury by referring to the complaining witness as "the victim"?

IV. Was Appellant denied his constitutional right to a fair trial before an impartial jury when one of the jury members had knowledge that Appellant had previously been incarcerated at the Wyoming State Penitentiary, and failed to divulge this fact when asked on *voir dire* if he knew Appellant?

In a supplemental brief, Sanchez submits this additional issue:

[V.] Did the Appellant receive ineffective assistance of counsel from his attorneys in their representation of him in the court below?

### FACTS

[¶ 3] In February 2008, Sanchez and the victim, AI, started exploring a dating relationship. On February 10, Sanchez showed up unannounced at the victim's apartment with some cocaine. The victim did not want Sanchez or the cocaine in her apartment, and she told him to leave. When Sanchez refused to do so, the victim retrieved a knife, pointed it at him, and again told him to leave, which he did.

[¶ 4] Two days later, during the early evening hours of February 12, Sanchez and the victim were at her uncle's apartment. Both were heavily intoxicated. Eventually, the two went to the victim's apartment, which was located in the same building, where they continued to drink. Around 1:00 a.m. on the 13th, a cab service delivered more vodka and cigarettes to the apartment. Sanchez left with the cab driver, but returned to the victim's apartment a few minutes later. Shortly thereafter, the atmosphere in the apartment abruptly and drastically changed. According to the victim, Sanchez "snapped" while they were talking about art. Over the next four to five hours, Sanchez repeatedly choked the victim, pushed her, kicked her, beat her with his fists, pounded her skull with a glass beer mug, and threatened to kill her. During the mêlée, Sanchez placed a knife against the victim's throat, stating: "See how easy this would be," and tied a cell phone cord around her neck in such a fashion that it could be tightened with ease at anytime. The victim fought back and tried without success to escape the situation. At one point she attempted to call 911, only to have Sanchez grab the phone and throw it out of her reach.

[¶ 5] The physical attack finally ended around 6:00 a.m. when a friend of the victim showed up at her apartment. Sanchez then

left the residence. About 45 minutes later, Sanchez called 911 and reported that he had been stabbed by the victim. Sergeant Chris Gulbrandson and Officers Jeff Sheaman and John Thompson of the Rawlins Police Department were dispatched to Sanchez's residence. After speaking with Sanchez and observing two small stab wounds, one in Sanchez's upper left arm and the other in his left chest, Sergeant Gulbrandson and Officer Sheaman went to the victim's apartment to interview her about the stabbing, while Officer Thompson accompanied Sanchez to the hospital.[1]

[¶ 6] The officers arrived at the victim's apartment around 7:00 a.m. When the victim opened the door, the officers immediately noticed that she was covered in blood. She had blood in her eyes and ears, as well as on her face, arms and legs. Her hair and clothing were saturated and blood was oozing from open wounds throughout her head and body. The officers also observed a cell phone cord tied around the victim's neck. The officers called for assistance and requested that an ambulance be dispatched to the residence.

[¶ 7] When the officers went inside, they found an apartment in disarray; furniture was out of place and/or tipped over and there were cushions, bedding and other items on the floor. The officers noticed blood on the walls and floor throughout the apartment, and found blood-soaked bedding in the victim's bedroom, a bloody towel in the bathroom sink, and multiple bloody "head prints" on the bedroom wall and bathroom door. They also discovered a butcher knife, with blood on both the blade and handle, on the bedroom floor and a bloody glass beer mug lying on the bed.

[¶ 8] The victim was transported to the hospital, where she remained for approximately nine hours. A medical examination revealed numerous bruises on the victim's face, scalp, chest, arms and hands, a perforated left ear drum, blood in the external canals of both ears, and several lacerations on her hands, left knee and left heel. The examination also revealed a dozen severe lacerations in the victim's scalp and forehead, all of which had to be sutured.[2]

[¶ 9] During the ensuing investigation, police executed a search warrant at Sanchez's residence. In a search of the game room where Sanchez had initially spoken with the officers that morning, police discovered the victim's social security card and a baggie containing 7.14 grams of a white powdery substance hidden behind a speaker. Testing of that substance revealed a mixture of baking soda and cocaine.

[¶ 10] On February 15, 2008, the State charged Sanchez with one count of attempted first degree murder, one count of aggravated assault and battery, one count of felony possession of a controlled substance, and one misdemeanor count of interference with an emergency call. The case went to trial on December 15, 2008. At the close of the State's case, Sanchez moved for judgment of acquittal alleging the State had failed to provide sufficient evidence proving all of the elements necessary for conviction on the charged offenses. The district court denied the motion.

[¶ 11] Thereafter, Sanchez presented evidence in defense of the charges, including his own testimony. Sanchez admitted striking the victim numerous times during a 15- to 20-minute fight, but claimed he did so in self-defense. Sanchez testified that, during this time, the victim continually bit him and stabbed him three times, and he punched her in the head and body in order to get the knife away from her and to stop the biting. Sanchez, however, denied responsibility for the full extent of the victim's injuries and specifically denied striking her with the beer mug. He also denied taking the victim's phone during the incident, tying the cord around her neck, and having any knowledge

---

1. Sanchez was treated for the two stab wounds, as well as some minor scratches on his face and chest. While there, Sanchez was belligerent and uncooperative with medical and law enforcement personnel and ultimately had to be chemically sedated.

2. The doctor who treated the victim testified that in his 29 years of practice he had rarely seen an individual, including victims of wrecks, with injuries as extensive as the victim's.

of the cocaine found behind the stereo speaker.

[¶ 12] At the conclusion of a four-day trial, the jury acquitted Sanchez on the attempted first degree murder charge, but found him guilty of the lesser-included offense of attempted second degree murder, as well as guilty on the other charged offenses. The district court sentenced Sanchez on March 20, 2009, to a combined prison term of thirty to forty years. Sanchez appealed the judgment and sentence, and that appeal was docketed in this Court as case number S–09–0113.

[¶ 13] While his direct appeal was pending in this Court, Sanchez moved the district court for a new trial on the grounds of juror misconduct, alleging that two jurors failed to disclose during voir dire that they knew Sanchez as a result of their employment at the Wyoming State Penitentiary. The district court held an evidentiary hearing and denied Sanchez's new trial motion. Sanchez appealed that denial, and that appeal was docketed in this Court as case number S–10–0044. This Court consolidated the appeals.

[¶ 14] More than one month after filing his opening appellate brief, Sanchez, through new counsel, filed a motion in this Court requesting a limited remand to the district court for an evidentiary hearing concerning the effectiveness of his trial counsel. In addition, or in the alternative, Sanchez requested that he be permitted to file a supplemental brief on the issue of whether trial counsel rendered ineffective assistance.[3] We denied Sanchez's motion for a remand, but granted his request to file a supplemental brief addressing trial counsel's alleged ineffectiveness.

[¶ 15] Additional facts will be set forth as necessary in our discussion of Sanchez's appellate issues.

## DISCUSSION

### Motion for Judgment of Acquittal

[¶ 16] Sanchez first takes issue with the district court's denial of his motion for judgment of acquittal on the possession charge. Sanchez maintains the evidence was insufficient to support a reasonable conclusion that he was in actual or constructive possession of the cocaine. Our response to Sanchez's argument will be brief.

[¶ 17] As previously noted, Sanchez moved for judgment of acquittal at the close of the State's case. After the district court denied that motion, Sanchez introduced evidence in defense of the possession charge. The law is well established that a defendant's introduction of evidence following the denial of a motion for judgment of acquittal at the end of the State's case constitutes a waiver of that motion, thereby precluding appellate review of that denial. *Granzer v. State*, 2010 WY 130, ¶ 7, 239 P.3d 640, 643–44 (Wyo. 2010); *Butcher v. State*, 2005 WY 146, ¶¶ 12, 14, 123 P.3d 543, 548 (Wyo.2005); *Robinson v. State*, 11 P.3d 361, 368 (Wyo.2000); *Hodges v. State*, 904 P.2d 334, 339 (Wyo.1995); *see also* 6 Wayne R. LaFave et al. *Criminal Procedure* § 24.6(b) at 443–44 (3d ed.2007). Consistent with existing law, we hold that Sanchez waived the right to challenge the district court's ruling in this appeal. Consequently, we will not consider his claim. We also do not consider whether the evidence as a whole at the close of all the evidence is sufficient to sustain Sanchez's possession conviction because Sanchez did not raise that discrete issue in his opening brief.

### Hearsay Testimony

[¶ 18] At trial, Sergeant Gulbrandson testified that after speaking to Sanchez on the morning of February 13, he went to the victim's apartment to interview her about the reported stabbing. He then testified as to the victim's behavior and appearance when she opened the door to her apartment:

[SERGEANT GULBRANDSON]: [The victim] slowly opened the door, kind of peeked—she wasn't sure—you could tell she wasn't sure who was at the door, so she kind of peeked around the door.

---

3. After new counsel entered his appearance, this Court allowed the Wyoming Public Defender's Office to withdraw as Sanchez's counsel.

When she seen myself and Officer Sheaman, she opened the door fully.

Her condition at that time was very scary. She was completely covered in blood. She had dried blood around her lips. She had blood in her ears and her eyes. Her hair was actually matted with blood. She had blood on her shirt, on her arms. It was fairly gruesome.

Sergeant Gulbrandson then testified about his assessment of the seriousness of her injuries:

[SERGEANT GULBRANDSON]: Her condition was very hard to diagnose, because there was so much blood, and it was coagulated and matted and it was hard to tell how many injuries she had, where exactly they were, and whether or not they were life-threatening. She—I originally noticed there was a cord around her neck. I checked that, made sure it wasn't constricting her airway. I checked for profuse bleeding from any wound. She typically had an oozing effect about her whole body. . . .

\* \* \* \*

Blood continually came out of her head. Her hair actually dripped with blood.

The sergeant next described the victim's demeanor:

[SERGEANT GULBRANDSON]: I was rather dumbfounded by her demeanor. She was—she was very agitated. She didn't actually complain of a lot of pain, but you could tell—I think she was kind of numb. She was very talkative. I could—obviously she was either intoxicated or was suffering from a head wound to make her appear to be· intoxicated. She was just very angry.

[¶ 19] When the State asked if the victim had made any statements regarding what had happened to her, defense counsel posed a hearsay objection. After some discussion, the district court overruled defense counsel's objection and allowed the testimony under the "excited utterance" exception to the hearsay rule. Thereafter, the following exchange occurred:

[PROSECUTOR]: . . . What statements, if any, did she make as to how she had gotten into that condition?

[SERGEANT GULBRANDSON]: She stated that Henry tried to kill her throughout the night.

Q. Did she make any other statements regarding that night during the time that she was talking to you?

A. She stated she was—that Henry choked her, that he beat her with a mug that night, that he beat her—it was just an all-night-long ordeal.

\* \* \* \*

Q. . . . Did she state to you whether or not she had fought Mr. Sanchez off during the night?

A. She was very proud of herself to the fact that she had fought all night and believed that was the reason that she was still alive.

[¶ 20] Sanchez contends the district court erred in allowing the testimony of Sergeant Gulbrandson under the excited utterance exception to the hearsay rule. In reviewing the propriety of the district court's evidentiary ruling, we are guided by the following principles:

Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This Court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion. We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. In the absence of an abuse of discretion, we will not disturb the trial court's determination. The burden is on the [appellant] to establish such abuse.

*Brown v. State,* 2005 WY 37, ¶ 12, 109 P.3d 52, 56 (Wyo.2005) (quotation marks and internal citations omitted); *see also Farmer v. State,* 2005 WY 162, ¶ 8, 124 P.3d 699, 703 (Wyo.2005); *Holloman v. State,* 2005 WY 25, ¶ 10, 106 P.3d 879, 883 (Wyo.2005).

[¶ 21] Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E. 801(c). Hearsay is not admissible unless it falls within a well-delineated exception. W.R.E. 802. An exception is found for an "excited utterance," which is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." W.R.E. 803(2). In addressing the excited utterance exception, we have said:

> "The exception is founded upon the proposition that a statement made during the stress of excitement resulting from a startling event is probably trustworthy, since there is not leisure to reflect, contrive or fabricate. The rule assumes the presence of a startling event which temporarily stills the senses and alleviates any motive to fabricate. A leading treatise explains that the excited utterance exception is justified by 'the special reliability that is furnished when excitement suspends the declarant's powers of reflection and fabrication.' "

*Boykin v. State,* 2005 WY 15, ¶ 7, 105 P.3d 481, 483 (Wyo.2005) (quoting *Oldman v. State,* 998 P.2d 957, 961 (Wyo.2000)) (citations omitted in original).

[¶ 22] This Court has identified five factors to be considered in determining the admissibility of evidence under the excited utterance exception: (1) the nature of the startling event; (2) the declarant's physical manifestation of excitement; (3) the declarant's age; (4) the lapse of time between the event and the hearsay statement; and (5) whether the statement was made in response to an inquiry. *Boykin,* ¶ 8, 105 P.3d at 483. The ultimate inquiry is whether the "declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation." *Id.* (quoting *James v. State,* 888 P.2d 200, 206 (Wyo.1994)).

[¶ 23] In this case, the first factor weighs heavily in favor of admissibility. The victim was the recipient of a savage beating that took place over a period of hours. Little question exists that the beating was a shocking and startling event. The second factor, the victim's manifestation of excitement, also favors admission. At the time the statements were made, the victim was very angry and agitated, and she was pacing back and forth in the apartment. The third factor, the victim's age, is neutral with respect to these facts, but the fourth factor favors admission. The precise time elapsing between when the beatings actually stopped and the statements is unclear from the record, but the record shows the victim was still under the stress of the incident when she spoke to Officer Gulbrandson approximately one hour after Sanchez left the apartment. *See Streitmatter v. State,* 981 P.2d 921, 926 (Wyo.1999) (under stress of excitement 45 minutes after startling event); *see also United States v. Iron Shell,* 633 F.2d 77, 86 (8th Cir.1980) (under the stress of excitement 45 to 75 minutes after startling event). The fifth factor also favors admissibility because there is no indication the statements were made in response to an inquiry by the officers as to what Sanchez had done. Finally, based on the descriptions of the victim provided at trial, we are confident that her statements were not the product of reflection or deliberation. We find the challenged statements were properly admitted as excited utterances under W.R.E. 803(2) and, consequently, no abuse of discretion occurred in this instance.

### District Court Referring to AI as "the victim"

[¶ 24] Sanchez contends that reversible error occurred when the district court referred to AI as the victim in the case. Sanchez claims the district court's actions violated his right to a fair trial by an impartial jury and effectively nullified his claim of self-defense.

[¶ 25] At issue is the following statement made during the State's voir dire,

which we have highlighted and placed in context:[4]

> THE COURT: First of all, this case happened February 13, 2008. It happened ... in Rawlins, Wyoming. That's in Carbon County. It's in the ... Apartments. Now, I don't know if there has been much media coverage, but you already know who the defendant is in this case. It is Mr. Henry R. Sanchez. **The victim is [AI].** Does anybody know about this case? Has anybody heard about this case prior to coming in here today? [Emphasis added.]

Sanchez acknowledges that he did not object to the alleged error at trial and, consequently, he bears the burden of demonstrating plain error. Under the plain error doctrine, Sanchez must prove, by reference to the record, the existence of a clear and unequivocal rule of law which was violated in a clear and obvious, not merely arguable, way and resulting material prejudice to a substantial right. *Miller v. State,* 2006 WY 17, ¶ 15, 127 P.3d 793, 797–98 (Wyo.2006); *Duke v. State,* 2004 WY 120, ¶ 91, 99 P.3d 928, 954 (Wyo.2004). To establish material prejudice, Sanchez must show a reasonable possibility exists that he would have received a more favorable verdict in the absence of the error. *Miller,* ¶ 15, 127 P.3d at 798. We find that Sanchez has not satisfied his burden.

[¶ 26] Primarily, we are not convinced that any error occurred in this instance. Sanchez's entire argument is premised on a contention that the district court improperly "instructed" the jury panel, and thus members of the seated jury, that AI was, in fact, the victim in the case.[5] However, viewing the challenged statement in proper context, it is clear the district court was simply describing the alleged roles of the major identified players in the case in an effort to ascertain if any of the potential jurors had knowledge of the case, or had any ties to it or the parties which might prevent them from being impartial or fair. The district court did not tell the panel that, as a matter of law, it had to consider AI to be a victim, much less Sanchez's victim.

[¶ 27] Moreover, we are not persuaded the district court's statement materially prejudiced Sanchez. The district court's description of AI as the victim was a single, isolated incident that occurred at the beginning of a four-day trial. The jury was instructed that it was the sole judge of the facts of the case and that it was to disregard any comment the court made regarding the facts in assessing Sanchez's guilt or innocence on the charged offenses. Additionally, it was uncontested at trial that AI was the victim of a vicious beating.[6] The only real dispute concerned whether Sanchez was her assailant and, if so, whether he was the first aggressor or acted in self-defense. Lastly, as already noted, the evidence of Sanchez's guilt was substantial. After careful consideration of the record, we do not believe a reasonable possibility exists that the jury's verdict would have been more favorable to Sanchez in the absence of that isolated statement. Accordingly, we cannot find the existence of plain error.

### Denial of Motion for New Trial

[¶ 28] During voir dire, the prosecutor inquired of the jury panel if anyone "knew" Sanchez. Several potential jurors acknowledged personally knowing Sanchez. One of the potential jurors, Juror R., indicated during an in-chamber discussion that he had direct knowledge and experience with Sanchez through his employment in the intensive treatment unit, a drug and alcohol program, at the Wyoming State Penitentiary. Upon defense counsel's request, the district court removed Juror R. for cause. Two additional jurors from the venire, Juror K. and

---

4. After reviewing the transcript of voir dire, we question whether the district court actually uttered the statement at issue. When viewed in context, this entire excerpt appears to be an aspect of the prosecutor's voir dire that was inadvertently attributed to the district court by the court reporter. However, because the parties have proceeded on the assumption the transcript is correct, we will also do so.

5. A jury instruction is defined as "[a] direction or guideline that a judge gives a jury concerning the law of the case." Black's Law Dictionary 935 (9th ed. 2009).

6. "Victim" is defined as a "person harmed by a crime, tort, or other wrong." Black's Law Dictionary 1703 (9th ed. 2009).

Juror P., also worked at the state penitentiary. Neither indicated during voir dire that they knew Sanchez. Both served as jurors on Sanchez's trial.

[¶ 29] After trial, an investigator for the Wyoming Public Defender's Office interviewed the jurors who sat on Sanchez's trial. During those interviews, several jurors allegedly commented regarding Juror P.'s and Juror K.'s employment at the state penitentiary. Juror P. allegedly informed the investigator that he knew from his employment that Sanchez had previously been incarcerated at the state penitentiary. Based on this newly discovered information, Sanchez filed a motion for a new trial pursuant to W.R.Cr.P. 33(c), asserting, in pertinent part, that Jurors P. and K. committed misconduct by failing to disclose their knowledge of him during voir dire. More particularly, relying on *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), Sanchez contended that his right to a fair trial before an impartial jury had been violated by the jurors' failure to answer honestly a material question during voir dire for, had they disclosed they knew him, such would have provided a valid basis for a challenge for cause, as had been the case with Juror R. Sanchez also alleged the jurors were biased against him.

[¶ 30] The district court held an evidentiary hearing on the motion, at which Juror K. and Juror P., as well as four other jurors, testified. Juror K. testified that he did not know Sanchez prior to the trial. He went on to explain that his duties at the prison did not provide him the opportunity to meet and interact with the inmates. Juror P. testified as follows regarding his knowledge of Sanchez:

[APPELLATE COUNSEL]: Did you know Mr. Sanchez prior to the start of the trial?

A. Not personally.

Q. Could you explain that to me.

A. I didn't—I knew of a previous incarceration at the penitentiary before.

Q. And how did you know ... of a previous incarceration before?

A. I worked there. It was—under custody—I had seen him prior at the penitentiary.

* * * *

Q. Did you know what he was incarcerated for?

A. No.

[¶ 31] The district court ultimately issued a decision letter and order denying Sanchez's new trial motion. In relevant part, the district court determined that Sanchez had not demonstrated that either juror intentionally failed to answer honestly a material question during voir dire, nor had he shown that the two jurors were biased. In this appeal, Sanchez challenges the district court's ruling.[7]

[¶ 32] The law is well settled that a defendant seeking a new trial based on newly discovered evidence must establish: 1) the new evidence did not come to the defendant's knowledge until after the trial; 2) that it was not owing to the lack of due diligence that the new evidence did not come to light sooner; 3) the evidence is so material that it would probably produce a different verdict if a new trial is granted; and 4) the evidence is not cumulative. *Smith v. State*, 2008 WY 98, ¶ 15, 190 P.3d 522, 526 (Wyo.2008); *Opie v. State*, 422 P.2d 84, 85 (Wyo.1967). All four of these factors must be met for a defendant to be entitled to a new trial, and, if any one factor is not satisfied, there is no error in the denial of the new trial motion. *Grable v. State*, 664 P.2d 531, 535 (Wyo.1983). A denial of a motion for new trial is reviewed for an abuse of discretion. *Chauncey v. State*, 2006 WY 18, ¶ 13, 127 P.3d 18, 21 (Wyo.2006).

[¶ 33] No question exists that the evidence of juror misconduct/bias in this case was newly discovered evidence and that its late discovery was not due to the lack of due diligence. Rather, the issue here revolves around the substantive question of whether Sanchez could show that Juror P. was dishonest during voir dire and biased against him, an inquiry relevant to the issue of mate-

---

**7.** On appeal, Sanchez has abandoned his attack on Juror K., and limits his argument to challenging the district court's ruling concerning Juror P.

riality encompassed in the third element of the new trial standard. *Smith*, ¶ 16, 190 P.3d at 527.

[¶ 34] This Court has summarized the law applicable to the determination of whether a defendant is entitled to a new trial based on allegations that a juror was untruthful during voir dire or was biased:

> Requests for a new trial on the basis that a juror was not honest during *voir dire* or was biased may be brought in different ways. First, a claim may be brought under the principles articulated by the United States Supreme Court in *McDonough*. In order to obtain a new trial under *McDonough*, 464 U.S. at 556, 104 S.Ct. 845, a party must demonstrate
>
> > that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.
>
> In order to satisfy the first part of the *McDonough* test, the party must show that the juror intentionally gave an incorrect answer to a *voir dire* question. *Gonzales v. Thomas*, 99 F.3d 978, 984 (10th Cir.1996) (applying the *McDonough* test to a criminal case). The question of whether a juror was honest during *voir dire* is a factual determination reviewed for clear error. *Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 515 (10th Cir.1998).
>
> * * * *
>
> In addition to the *McDonough* test, a party can obtain a new trial by showing that the juror had an actual or implied bias. *Skaggs*, 164 F.3d at 516. "A finding of actual bias is 'based upon express proof, e.g., ... admission by the prospective juror of a state of mind prejudicial to a party's interest.'" *Id.* at 517, quoting *United States v. Haynes*, 398 F.2d 980, 984 (2d Cir.1968). "Actual bias is a factual finding reviewed for clear error." *Id.* at 516. *See also, Gonzales*, 99 F.3d at 986. A determination on a claim of implied bias, on the other hand, is a question of law

> reviewed *de novo*. *Skaggs*, 164 F.3d at 517. "Implied bias can be proved by showing that the juror had a 'personal connection to the parties or circumstances of the trial'" or when there are "similarities between the personal experiences of the juror and the issues being litigated." *Id.*, quoting *Gonzales*, 99 F.3d at 987.

*Smith*, ¶¶ 26–27, 29, 190 P.3d at 530–32.

[¶ 35] With these legal principles in mind, we now turn to the question of whether the district court correctly denied the motion for new trial. The district court concluded that Sanchez did not satisfy the first part of the *McDonough* test:

> Based upon Juror [P.'s] testimony, the Court finds that Juror [P.] did not fail to answer the question regarding whether he knew Mr. Sanchez honestly. His testimony reveals that he knew whom Mr. Sanchez was and knew of Mr. Sanchez, but he did not feel that he "knew" Mr. Sanchez.
>
> This case is analogous to *United States v. McConnell* [sic], 464 F.3d 1152 (10th Cir.2006). There, jurors were asked if they had ever been involved "in any court" in a criminal matter in which they had been a defendant, witness, or victim. *Id.* at 1156. The eventual jury foreman did not respond, although he had once been charged with several felonies. *Id.* The charges against the jury foreman had been dismissed at an early stage in the proceedings. *Id.* At the hearing on the defendant's new trial request, the jury foreman stated that he did not respond to the *voir dire* inquiry because he had not been "involved in any court" since the charges against him had been dismissed before trial. *Id.* The court found that, though the juror's answer (or non-answer) was mistaken, it was not dishonest. *Id.* at 1157. "The *McDonough* test is 'directed at intentionally incorrect responses[.]'" *Id.* at 1157–58 (*quoting Gonzales v. Thomas*, 99 F.3d 978 (10th Cir.1996)).
>
> The facts in this case are even more innocuous. Juror [P.] did not think that he "knew" Mr. Sanchez and responded accordingly. Though it was later discovered that Juror [P.] knew who Mr. Sanchez was, this fact does not indicate his response (or

non-response) was dishonest or intentionally incorrect. The testimony of Juror [C.] also supports Juror [P.'s] testimony that he knew who Mr. Sanchez was, but did not "know" him. (*See* November 10, 2009[,] Transcript, p. [50] ("I'm not sure that he said that he knew him, but he said that he knew who he was.")).]

\* \* \* \*

Mr. Sanchez has not demonstrated that . . . Juror [P.] failed to answer honestly a material question in *voir dire*. He, therefore, cannot satisfy the *McDonough* test. . . .

[¶ 36] After careful review, we cannot say that the district court's conclusion was clearly erroneous. While we might agree with Sanchez that Juror P. should have answered the voir dire question in the affirmative, we cannot conclude that his failure to do so was anything other than an honest mistake based on a misunderstanding of the scope of that question. Since there is no evidence that Juror P. deliberately failed to answer honestly a material question in voir dire, we agree with the district court that the *McDonough* test cannot be satisfied. As such, it is not necessary to address the second part of the test.

[¶ 37] The district court also found that Sanchez failed to prove the existence of actual or implied bias on the part of Juror P. In his appellate brief, Sanchez does not challenge the district court's finding with respect to actual bias, and he fails to offer any cogent argument, in accordance with *Skaggs*, proving that Juror P. was impliedly biased. We therefore summarily affirm the district court's determination on this issue.

[¶ 38] In sum, we hold the district court did not abuse its discretion in denying Sanchez's motion for a new trial.

### Ineffective Assistance of Counsel

[¶ 39] Sanchez contends trial counsel rendered constitutionally ineffective assistance. Specifically, Sanchez faults counsel for not conducting an adequate voir dire and for failing to object to leading questions, references to AI, the complaining party, as the victim, the prosecutor's declaration in opening statement that Sanchez would testify, the prosecutor's reference to the white powdery substance as cocaine, testimony that Sanchez was possibly selling cocaine, improper opinion testimony by the State's witnesses, and the prosecutor's statement that Sanchez was seeking "jury nullification" with respect to the cocaine possession charge.

[¶ 40] Claims of ineffective assistance of counsel entail mixed questions of law and fact and, consequently, our review is de novo. *Proffit v. State*, 2008 WY 114, ¶ 33, 193 P.3d 228, 241 (Wyo.2008). For Sanchez to prevail on an ineffectiveness claim, he must first establish that trial counsel's performance was deficient. This requires a showing that counsel failed to render such assistance as would have been offered by a reasonably competent attorney. *Dettloff v. State*, 2007 WY 29, ¶ 18, 152 P.3d 376, 382 (Wyo.2007) (citing *Hirsch v. State*, 2006 WY 66, ¶ 15, 135 P.3d 586, 593 (Wyo.2006)). Sanchez then must demonstrate that counsel's deficient performance prejudiced his defense. Under the prejudice prong, Sanchez must demonstrate a reasonable probability exists that, but for counsel's deficient performance, the outcome of his trial would have been different. *Dettloff,* ¶¶ 18–19, 152 P.3d at 382. The failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Id.*

[¶ 41] We find that Sanchez has not satisfied his burden on either prong of the ineffectiveness standard. First, Sanchez's ineffectiveness argument is devoid of any analysis establishing that counsel's performance was legally deficient in any of the identified areas. For example, Sanchez's contention that counsel should have posed an objection when various witnesses gave allegedly improper testimony consists essentially of excerpts of the witnesses' trial testimony without any analysis or citations to pertinent legal authorities. His other claims concerning counsel's failure to object are similarly deficient. As to counsel's alleged inadequate voir dire, Sanchez simply points to the fact the voir dire consisted of "some twenty questions" spanning six pages of the trial transcript, and offers only a conclusory charac-

terization of it as extremely brief and shallow and "below the line of competence." Sanchez does not identify with any specificity the questions counsel were remiss in not pursuing, nor does he otherwise provide any insight into what counsel should have, or even could have, done differently. Sanchez's argument seems to rest on the fact the district court twice expressed frustration with counsel on other matters during his trial. However, this fact alone does not establish that counsel's performance was outside the range of professionally competent assistance with respect to the specific matters at issue in this appeal.

[¶ 42] More importantly, Sanchez has made absolutely no showing of actual prejudice arising from counsel's alleged deficient performance. That is, he does not explain, within the context of the facts of this case, how counsel's alleged errors adversely affected the outcome of his trial. Rather, Sanchez offers nothing more than a bald assertion that prejudice occurred. His argument in this regard seems to be simply: "Because I said it is so, then it must be so." Suffice it to say, Sanchez's argument is utterly insufficient to satisfy his burden of proving counsel rendered prejudicially deficient assistance. We therefore reject Sanchez's claim that he was deprived of his constitutional right to the effective assistance of counsel.

[¶ 43] Before leaving this topic, we are compelled to address an additional matter. As already noted, Sanchez presented a motion to this Court requesting that we grant a partial remand in order for the district court to conduct an evidentiary hearing on the issue of whether his trial counsel provided legally effective assistance. This Court denied his motion. Sanchez challenges that denial in his appellate brief and asks this Court to reconsider and grant his remand request. We decline Sanchez's request for the reasons discussed below.

[¶ 44] There are generally two types of ineffective assistance of counsel claims, those that are apparent in the trial record and those that are outside the record. An evidentiary hearing is necessary only on the latter type of claim, if an appellant can make a showing that his ineffectiveness claim has merit. *Rutti v. State*, 2004 WY 133, ¶¶ 27–29, 100 P.3d 394, 407 (Wyo.2004); *Calene v. State*, 846 P.2d 679, 687 (Wyo.1993); W.R.A.P. 21(a). ("Such remand shall be available only if the motion is accompanied by affidavits containing nonspeculative allegations of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel's representation was deficient and prejudiced the appellant.")

[¶ 45] In his motion for remand, Sanchez claims his trial counsel were ineffective in five general ways. First, Sanchez complains that trial counsel failed to present evidence that the victim engaged in a sham marriage with a Russian national and encouraged others to engage in such marriages. Sanchez does not identify any legal basis for the admissibility of this "sham marriage" evidence, nor does he explain how its admission would alter the outcome of his trial.

[¶ 46] Second, Sanchez contends trial counsel were ineffective in failing to call four witnesses who would have testified the victim told conflicting stories about the altercation and one witness who would have testified about the victim's general reputation for dishonesty. Sanchez does not identify, via affidavit or otherwise, the proposed testimony of the five individuals. Nor does he identify the prejudice resulting from counsel's failure.

[¶ 47] Third, Sanchez contends that his mother should have been called as a witness to testify regarding her knowledge of the baggie containing cocaine. He claims his mother would have testified that a police officer took the baggie from her freezer and "planted" it behind the stereo speaker. An affidavit from his mother supports this claim. The affidavit indicates that his mother advised trial counsel of this information and of her desire to testify about the same at trial. Sanchez does not explain how trial counsel's apparent tactical decision not to have his mother testify constituted prejudicially deficient assistance.

[¶ 48] Fourth, Sanchez complains that trial counsel did not permit him to participate

in jury selection, and claims that, if provided a list of the venire, he would have identified panel members who knew him from his time at the penitentiary. Sanchez does not identify these panel members. If this claim involves the same jurors who were the subject of his new trial motion, the matter has been addressed in this opinion.

[¶ 49] Lastly, Sanchez generally contends that trial counsel did not adequately communicate with him prior to trial. Even assuming they did not, Sanchez does not identify how counsel's lack of communication actually prejudiced him.

## CONCLUSION

[¶ 50] We find no reversible error with respect to any of the issues raised in this appeal. Affirmed.