2005 WY 15

**Michael Joseph BOYKIN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 03–212.

Supreme Court of Wyoming.

Feb. 9, 2005.

Representing Appellant: Ken Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Sue Chatfield, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and BRACKLEY, D.J.

KITE, Justice.

[¶1] After a jury trial, Michael Boykin was convicted of one count of assault and battery on a household member, a third offense felony under the Family Violence Protection Act (FVPA), Wyo. Stat. Ann. § 6–2–501(b) and (f)(ii) (LexisNexis 2003). He appeals, claiming the district court abused its discretion in admitting the testimony of two witnesses under the excited utterance and prior inconsistent statement exceptions to the hearsay rule, W.R.E. 803(2). We find no abuse of discretion and affirm.

## ISSUES

[¶2] Mr. Boykin states the issues as follows:

### ISSUE I

Whether the district court erred by admitting prejudicial and improper hearsay over appellant's objection, determining that such hearsay qualified as an "excited utterance" under W.R.E. 803(2).

### ISSUE II

Whether the district court erred by admitting prejudicial and improper hearsay over appellant's objection, determining that such hearsay qualified as a statement of recent perception under W.R.E. 804(b)(5)

### ISSUE III

Whether because of the errors made during appellant's trial, cumulative error occurred, requiring a new trial.

The State presents a single issue:

Whether the district court properly admitted the testimony of a convenience store clerk and a police officer.

## FACTS

[¶3] After work on October 21, 2002, Mr. Boykin and a couple of friends went to a bar in Natrona County, Wyoming. Shortly after 2:00 a.m. the following morning, he and his friends returned to the home in Evansville, Wyoming where Mr. Boykin lived with his girlfriend, Tiffany Potter, and their two young children. Mr. Boykin looked in the refrigerator for a block of cheese in order to make sandwiches. When he could not find the cheese, Mr. Boykin went into the bedroom where Ms. Potter was sleeping, awakened her and asked her about the cheese. She informed him she had loaned the cheese to the neighbors. Shortly thereafter Mr. Boykin and Ms. Potter argued in the hallway. She slapped him and he hit her in the nose. She took the children and left the house, driving to a nearby convenience store. When she came into the store, the convenience store clerk called the police. At trial, Ms. Potter testified she did not remember whether or not she talked to the clerk about what happened. The clerk testified she told him Mr. Boykin hit her. When a police officer arrived, Ms. Potter talked with him about what had happened. She testified at trial that she first told him Mr. Boykin had hit her but then told him she didn't remember what happened. The convenience store clerk and the police officer testified that Ms. Potter told them Mr. Boykin hit her. Police arrested Mr. Boykin and charged him with domestic violence.

[¶4] At trial, over defense counsel's hearsay objection, the State called the convenience store clerk and police officer to testify concerning the statements Ms. Potter made to them on the night in question. The State also called Ms. Potter who testified she could not remember the circumstances of the injury. At the close of the evidence, the jury reached a verdict finding Mr. Boykin guilty of assault and battery on a family member, a third offense felony as defined by § 6–2–501(b) and (f)(ii). The district court sentenced Mr. Boykin to serve a term of eighteen to twenty-four months in the Wyoming State Penitentiary with credit for twenty-three days served.

## STANDARD OF REVIEW

[¶5] Rulings on the admissibility of evidence are within the sound discretion of the trial court. *Urbigkit v. State*, 2003 WY 57, ¶39, 67 P.3d 1207, ¶39 (Wyo.2003). We will not disturb such rulings absent a clear abuse of discretion. *Id.* An abuse of discretion occurs when it is shown the trial court

reasonably could not have concluded as it did. *Hannon v. State*, 2004 WY 8, ¶ 13, 84 P.3d 320, ¶ 13 (Wyo.2004).

## DISCUSSION

### 1. Admissibility of Statements to Convenience Store Clerk—Excited Utterance

[¶ 6] Mr. Boykin contends the district court abused its discretion in allowing the testimony of the convenience store clerk under the excited utterance exception to the hearsay rule. At trial, the State called the convenience store clerk as its first witness. In the course of inquiring about what occurred after Ms. Potter arrived at the convenience store on the night of the assault, the State asked the clerk whether he talked with Ms. Potter. The clerk responded affirmatively. The State then asked, "What happened?" and defense counsel made the following objection:

> Objection, Your Honor. Once again, he's going to testify about what she told him that evening. She will be testifying today. This is hearsay going to the truth of the matters.

The State responded that the expected testimony was hearsay but fell within the excited utterance exception to the hearsay rule. The district court overruled the objection[1], allowing the State to elicit the following testimony:

> Q. You can go ahead and state what it was that she had told you.
> A. She stated that while she was at home, her boyfriend or husband had came home and proceeded to go to the kitchen, open up the refrigerator, look for some cheese, I believe, a block of cheese. He could not find it. And she stated that he got very upset. And once he couldn't find it, he just proceeded to beat her up.

The State also elicited testimony from the clerk to the effect that Ms. Potter had fresh blood on her face and clothes when she came into the store, she was crying, distraught and nervous, and she told him the assault had just happened. The clerk also testified Ms.

Potter told him what happened in response to his inquiry whether she was all right.

[¶ 7] W.R.E. 803(2) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> (2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Addressing the excited utterance exception, we have said:

> The exception is founded upon the proposition that a statement made during the stress of excitement resulting from a startling event is probably trustworthy, since there is not leisure to reflect, contrive or fabricate. The rule assumes the presence of a startling event which temporarily stills the senses and alleviates any motive to fabricate. A leading treatise explains that the excited utterance exception is justified by "the special reliability that is furnished when excitement suspends the declarant's powers of reflection and fabrication."

*Oldman v. State*, 998 P.2d 957, 961 (Wyo. 2000) (citations omitted).

[¶ 8] This Court has specified five factors the trial court should consider in determining whether the excited utterance applies: 1) the nature of the startling event; 2) the declarant's physical manifestation of excitement; 3) the declarant's age; 4) the lapse of time between the event and the hearsay statement: and 5) whether the statement was made in response to an inquiry. *James v. State*, 888 P.2d 200, 206 (Wyo.1994). We have also said, however, that the ultimate inquiry must be whether the "declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation." *Id.* Applying these factors in *Oldman*, 998 P.2d at 963, we said:

> In this case, the first factor weighs heavily in favor of admissibility. The sav-

---

1. The district court did not state the grounds for its evidentiary ruling in open court at the time the objection was made. However, later, outside the presence of the jury, the district court explained the ruling was based on the excited utterance exception to the hearsay rule.

age beating of a pregnant woman disclosed by this record obviously had a shocking effect, and her concerns over her own well-being and that of the unborn child inhibited the capacity for reflection or fabrication. The second factor also favors admission in this case. The victim physically manifested her excitement in very apparent ways; the examining room physician described her demeanor as "quite distraught and hysterical" and "upset." The third factor is neutral with respect to these facts, but the fourth factor favors admission. The precise time elapsing between the beating and the statement is not clear from the record, but the record does show that the victim arrived at the police station within minutes after the neighbor called 911, and she was transported to the emergency room at the hospital within a short time. The final factor heavily favors admission because the victim made the statement to the examining room physician that inculpated Oldman before the doctor asked her any questions.

We also said admission of the testimony was proper under the ultimate *James* question:

> Based on the descriptions of the victim, which the examining room physician and other witnesses provided at the trial, it is clear that the victim's condition indeed was such that her statement was entirely spontaneous and not the result of reflection, deliberation, or fabrication.

[¶ 9] In contrast to our determination in *James*, we held in *Urbigkit*, ¶ 37, that the preclusion of police officer testimony concerning the statement of an unavailable witness was appropriate even though, only a short time before making the statement, the witness was in the midst of a gun battle and, according to the officer, was nervous and excited when she made the statement. We reached this result because of the time that elapsed between the event and the statement and because the statement was made in response to formal police questioning. We reiterated the *James* test and said,

> [w]hile the event itself was no doubt startling, the record establishes that the statement was made by an adult in response to a police inquiry at the detention center

approximately two and one-half hours after the event. In that sense, it is not clear it was a spontaneous utterance in response to the event itself. By itself, [the officer's] testimony that [the victim] seemed excited or nervous at the time is not enough to bring the statement within W.R.E. 803(2).

*Urbigkit*, ¶ 39.

[¶ 10] As these cases reflect, the determination of whether testimony is admissible under the excited utterance exception is fact dependent and must be decided on a case-by-case basis. With this consideration in mind, we turn to the question of whether the district court abused its discretion in allowing the convenience store clerk's testimony concerning Ms. Potter's statements to him when she arrived at the store and was waiting for police. Considering both the *James* five-part test and ultimate inquiry, we hold there was no abuse of discretion. Only a short time before making the statements, Ms. Potter was involved in what she confirmed was a heated, loud argument and physical altercation with her live-in boyfriend in the presence of one of her children and within hearing of the other child. During the argument, Ms. Potter was struck in the face, causing her nose to bleed. She took her children and drove to the convenience store, which she testified was five minutes "if that" from her home. She had fresh blood on her face and clothes when she arrived at the store. The store clerk described her as distraught, crying, and nervous. Ms. Potter testified when she arrived at the store she was pretty scared about what had happened. She also testified she was concerned about her children. The fact that she made the challenged statement in response to an inquiry is not sufficient under the circumstances to take the statement outside the excited utterance exception. The convenience store clerk asked, "Are you all right?" Ms. Potter responded according to the store clerk that her boyfriend assaulted her when he could not find the cheese. This non-responsive answer to the store clerk's inquiry further suggests that Ms. Potter's statement was spontaneous and not the result of reflection, deliberation, or fabrication. We affirm the

district court's ruling allowing the convenience store clerk's testimony.

## 2. Admissibility of Police Officer's Testimony—Prior Inconsistent Statement

■ [¶ 11] Mr. Boykin next argues the district court abused its discretion in allowing the police officer to testify concerning statements Ms. Potter made to him when he arrived at the convenience store. During the officer's testimony, the State asked the officer what he asked Ms. Potter. Defense counsel objected on the grounds of hearsay, reminding the district court that Ms. Potter had already testified. The district court overruled the objection on the ground that the testimony concerned a prior inconsistent statement. Later, out of the presence of the jury, the district court stated that the officer's testimony was perhaps an excited utterance but also was a statement of recent perception under W.R.E. 804(b)(5). The court reasoned that Ms. Potter's testimony that she could not remember what she told the officer made her in essence unavailable to testify concerning her conversation with law enforcement, bringing into play the hearsay exceptions and specifically 804(b)(5). Upon the court's order overruling the objection, the officer testified as follows:

> She had stated that her boyfriend had came home about 2:00. He had been at the bar. That he had got into an argument over a block of cheese. The argument turned into more. There was—she stated to me that they had shoved each other. It wasn't one part of—that she didn't shove him, but it was back and forth. And that her boyfriend had got upset and hit her in the nose.

[¶ 12] Based upon the record, we must determine whether any one of the three grounds advanced by the district court constituted a proper basis for allowing the testimony. That is, we must decide whether the officer's testimony was admissible as a prior inconsistent statement, an excited utterance, or a statement of recent perception. Because we find that the testimony was admissible as a prior inconsistent statement, we do not consider whether it falls under either of the hearsay exceptions cited by the district court.

[¶ 13] In *Willis v. State,* 2002 WY 79, ¶ 20, 46 P.3d 890, ¶ 20 (Wyo.2002), in which the defendant was convicted of felony larceny by bailee for selling three horses entrusted to his care, the trial court allowed the State to present witness testimony concerning the out-of-court statement of another witness the State previously called to testify. After the first witness, Ms. Willis, testified that she could not remember what happened to the three horses and denied previously stating they were sent to auction, the State called the second witness, Ms. Holland, who testified Ms. Willis told her that the horses were sent to auction. We said:

> Prior inconsistent statements are admissible under W.R.E. 613(b) to impeach by contradiction a witness' trial testimony. W.R.E. 613(b) provides: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require." This rule applies when two statements—one made at trial and one made previously—are irreconcilably at odds. In such an event, counsel is permitted to show the discrepancy by extrinsic evidence, if necessary. *United States v. Winchenbach,* 197 F.3d 548, 558 (1st Cir. 1999). The purpose of this type of impeachment evidence is to show a witness to be generally capable of making errors in his testimony. 3A John Henry Wigmore, Evidence § 1017 (Chadbourn rev.1970). In doing so, counsel can resort to the witness' own prior statements in which that witness has given a contrary version. *Id.*

We stated further:

> Prior statements made by a witness are not hearsay if the declarant testifies at the trial and is subject to cross-examination concerning the statements. W.R.E. 801(d)(1). The use of a prior inconsistent statement is not inadmissible hearsay because it is not offered for the truth of the matter asserted. Rather, it is used as a

tool to compare both statements and conclude that the declarant has erred in making one or the other without determining which statement is erroneous. 3A John Henry Wigmore, Evidence § 1018 (Chadbourn rev.1970).

Applying these principles to the facts in *Willis,* we concluded:

Ms. Holland's testimony properly falls within the scope of the Wyoming Rules of Evidence. The state asked Ms. Willis whether she could recall previously stating the three mares were sent to the auction. She was afforded an opportunity to explain or deny the prior inconsistent statement and denied ever making such a statement or knowing what ultimately happened to the horses. The defense then had full opportunity to explore the issue during her cross-examination. Next, the state used extrinsic evidence—Ms. Holland's testimony—to impeach Ms. Willis. Ms. Holland testified that Ms. Willis stated the three mares were sent to the auction. The state was entitled to introduce prior statements made by Ms. Willis that were inconsistent with her trial testimony. Therefore, we conclude the trial court did not abuse its discretion in permitting the impeachment evidence.

[¶ 14] Applying this reasoning to Mr. Boykin's case compels the same result. Ms. Potter testified on direct that she did not recall what happened on the night in question and did not know for sure who hit her. When the State asked what she told the police officer that night, she testified that at first she told him Mr. Boykin hit her because she was angry with him at the time and wanted to put the blame on him. She then went on to testify that she in essence retracted that statement when talking to the police officer and told him she really did not know what happened. The State then called the police officer to testify that Ms. Potter told him unequivocally at the convenience store immediately after the assault that Mr. Boykin hit her in the nose. He also testified she did not at any time change her story.

[¶ 15] The police officer's testimony in this regard was used to show that Ms. Potter gave two contradictory statements—the statement she gave to him on the night of the assault that Mr. Boykin hit her and the statement she gave at trial indicating she initially told police Mr. Boykin hit her but retracted that statement and said she did not remember what happened. Ms. Potter had the opportunity during her testimony to explain her statements to the police and said she made the statements because she was angry with Mr. Boykin. The defense then had the opportunity to explore the inconsistency during cross-examination. Thereafter, the State was entitled to introduce prior statements made by Ms. Potter that were inconsistent with her trial testimony. The trial court did not abuse its discretion in permitting the impeachment evidence.

[¶ 16]   Affirmed.