2011 WY 95

**Gary Dale MARQUESS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–10–0172.**

Supreme Court of Wyoming.

June 17, 2011.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Senior Assistant Attorney General; Stewart M. Young, Faculty Director, Prosecution Assistance Program; Jessica Y. Frint, Student Director, Prosecution Assistance Program. Argument by Ms. Frint.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1]  Gary Marquess (the appellant) was tried and convicted by a jury of aggravated assault and battery, battery, kidnapping, and being a habitual criminal.  The appellant appeals from the Judgment and Sentence, arguing that the district court abused its discretion when it admitted evidence of uncharged misconduct and prior consistent statements by the victim.  We will affirm.

## ISSUES

[¶ 2]  The parties raise two issues in this appeal.  Because of our disposition of the second issue we add a third issue to the statement of issues.

1.  Did the district court abuse its discretion when it admitted evidence of the events that occurred on March 1, 2009?

2.  Did the district court abuse its discretion when it admitted into evidence a 911 recording under W.R.E. 801(d)(1)(B)?

3.  Was the 911 recording admissible under W.R.E. 802(2) as an excited utterance?

## FACTS

[¶ 3]  The victim and the appellant met while they were in jail.  The series of events leading to the appellant's arrest, trial, conviction, and current appeal occurred following his and the victim's release from jail.  On Friday, February 27, 2009, the appellant, the appellant's brother, and the victim got together and drank alcohol and smoked meth-

amphetamine. The three men spent the night at the victim's hotel room. The next day, Saturday, February 28, 2009, the three got together again, consumed alcohol, and again spent the night in the victim's hotel room.

[¶ 4] The victim testified that on Sunday, March 1, 2009, the appellant asked him about whether he had access to any guns because the appellant needed one "to do some dirt." The victim responded that his parents owned guns and that he could get a gun for the appellant. Later that evening the three men went to a trailer home owned by the appellant's friend. The victim testified that upon arriving at the trailer home the victim stayed in the front family room while the appellant and the appellant's brother made their way to a room located at the back of the residence. A short time later, the victim was summoned to the rear of the trailer by an acquaintance of the victim who asked if the victim was the guy "that knows where to get guns." Once the victim made his way to the rear of the trailer, he was ambushed and held at knife point by the appellant, the appellant's brother, and the acquaintance, who accused the victim of being a confidential informant, or "nark." After some discussion between the armed men and the victim, a third party intervened, the situation deescalated, and the men left the residence. The men drove to the victim's hotel room where the appellant and the appellant's brother continued discussing the need to obtain guns. The three men once again spent the night in the victim's motel room.

[¶ 5] On Monday, March 2, 2009, the victim spent most of the morning with the appellant and the appellant's brother in the victim's hotel room. That afternoon, the appellant and the appellant's brother dropped the victim off at his parents' house. The victim testified that when the appellant dropped him off, the victim knew that the appellant wanted him to steal guns from his parents' house. After the victim spent several hours at his parents' house, his mother drove the victim back to his motel room

around 9:00 p.m. The victim entered his hotel room to find the appellant and the appellant's brother waiting for him. The appellant asked the victim whether he had any guns for him, to which the victim responded that he did not. The victim testified that the appellant then became very upset, made the victim sit in a chair, and struck the victim in the face. The victim also testified that the appellant was holding a knife during the altercation and made threatening remarks regarding the victim's parents. At some point, the victim stood up from the chair and the appellant punched and kneed the victim and slashed him in the face with the knife. The appellant then left the room to go to the parking lot to get plastic bags, duct tape, and rope from the appellant's brother's truck. The victim attempted to escape through a window, but was stopped by the appellant's brother. Shortly after the appellant returned to the room, the victim escaped through the window. The victim ran to the hotel office where he locked himself in the manager's office and called 911.

[¶ 6] The appellant was arrested the next morning and charged with two counts of aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(i)(b) (Lexis-Nexis 2009), conspiracy to commit aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(i)(b), § 6–1–303(a), and § 6–1–304, and kidnapping in violation of Wyo. Stat. Ann. § 6–2–201(a)(iii), (b)(i), (d). The State later filed an Amended Information including reference to the habitual offender statute found at Wyo. Stat. Ann. § 6–10–201(a)(i)(b)(ii).[1] The appellant was tried on January 25, 2010. The jury found the appellant guilty of aggravated assault and battery, simple battery, and kidnapping. The jury returned a not guilty verdict regarding the conspiracy charge. Following a separate jury trial relating to the habitual offender status, the jury found the appellant guilty, and the district court decreed habitual offender status as it related to the aggravated assault and battery charge and the kid-

---

1. A person found to be a habitual offender under the statute is one that is convicted of a violent felony and has at least two or more prior felony convictions. Wyo. Stat. Ann. § 6–10–201(a)(i)(ii). A habitual offender determination is punishable by life imprisonment if the person has three or more previous felony convictions. Wyo. Stat. Ann. § 6–10–201(b)(ii).

napping charge. Several months later the district court sentenced the appellant to life imprisonment for the aggravated assault and battery conviction, 180 days for the battery conviction, and life imprisonment for the kidnapping conviction.[2] The district court ordered the convictions to run concurrently. The appellant timely appealed.

## DISCUSSION

### Did the district court abuse its discretion when it admitted evidence of the events that occurred on March 1, 2009?

[¶ 7] The appellant argues that the district court abused its discretion when it admitted testimony relating to the incident on the night of Sunday, March 1, 2009, when the appellant, the appellant's brother, and an acquaintance allegedly held the victim at knife point. Specifically, the appellant argues that this testimony was uncharged misconduct evidence, governed by W.R.E. 404(b)[3], the State failed to provide adequate notice of its intent to use such evidence, and the district court failed to order a *Gleason* hearing relating to the evidence. The State counters that this evidence was not governed by W.R.E. 404(b) because it was direct evidence of one of the crimes charged, namely conspiracy. In the alternative, the State argues that the evidence would have been admitted under W.R.E. 404(b) as "course of conduct" evidence.

[¶ 8] Although the appellant made no contemporaneous objection to the admission of the evidence, he submitted a pre-trial demand for notice of intent to use W.R.E. 404(b) evidence. Generally, when there is an objection to the admission of evidence, we review the admission of that evidence for an abuse of discretion. *Nelson v. State*, 2010 WY 159, ¶ 29, 245 P.3d 282, 289 (Wyo.2010). We have recognized that a pre-trial demand

for notice of intent to use W.R.E. 404(b) evidence will act as a timely objection to the admission of W.R.E. 404(b) evidence at trial. *Howard v. State*, 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo.2002). However, as will be discussed below, we do not in this case consider the disputed evidence to be uncharged misconduct evidence, but instead direct evidence of one of the crimes charged. Consequently, the pre-trial demand for notice of intent to use W.R.E. 404(b) evidence did not substitute for a contemporaneous objection at trial to admission of the evidence.

[¶ 9] Because the appellant failed to object at trial to admission of the disputed evidence, we will review his claim for plain error. *Sweet v. State*, 2010 WY 87, ¶ 22, 234 P.3d 1193, 1202 (Wyo.2010). " 'Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming error was denied a substantial right resulting in material prejudice.' " *Id.* (quoting *Schreibvogel v. State*, 2010 WY 45, ¶ 19, 228 P.3d 874, 882 (Wyo.2010)). "The appellant bears the burden of proving plain error." *Christensen v. State*, 2010 WY 95, ¶ 6, 234 P.3d 1229, 1230 (Wyo.2010).

[¶ 10] The first prong of plain error is met because the record clearly reflects testimony by the victim regarding the incident when the victim was held at knife point by the appellant and the other two men. As for the second prong—whether there was a transgression of a clear and unequivocal rule of law—the following has been said regarding the admission of evidence of a conspiracy *vis-à-vis* a W.R.E. 404(b) claim:

> In a conspiracy case, "[a]cts committed in furtherance of the charged conspiracy are themselves part of the act charged." *United States v. Garcia Abrego*, 141 F.3d

---

**2.** The life sentences for aggravated assault and battery and kidnapping were pursuant to the habitual offender statute. *See supra* n. 1.

**3.** W.R.E. 404(b) provides:

(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other pur-

poses, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

142, 175 (5th Cir.1998). Evidence of such acts is therefore intrinsic and simply does not implicate the requirements of 404(b). *See id.*; *United States v. Badru*, 97 F.3d 1471, 1475 (D.C.Cir.1996) (quoting 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRAC-TICE AND PROCEDURE § 5239, at 450 (1978)) ("In cases where the incident offered is a part of the conspiracy alleged in the indictment, the evidence is admissible under Rule 404(b) . . . as direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the accused."); *United States v. Sasser*, 971 F.2d 470, 479 (10th Cir.1992) (affirming that direct evidence of the charged conspiracy was not 404(b) evidence and therefore did not require a limiting instruction on evidence of "other acts").

*United States v. Green*, 175 F.3d 822, 831 (10th Cir.1999); *see also United States v. Pace*, 981 F.2d 1123, 1135 (10th Cir.1992) ("Conduct during the life of a conspiracy that is evidence of the conspiracy is not Rule 404(b) evidence.").

[¶ 11] In the present case, the Sunday night incident was one of many pieces of direct evidence of the conspiracy with which the appellant was charged—conspiracy to commit the Monday night aggravated assault and battery. The conspirators (the appellant and his brother) were present at both incidents and the threats of serious violence, distrust in the victim, and interest in the victim stealing the guns were common themes in both the Sunday night incident and the Monday night assault. The Sunday night incident was undertaken in furtherance of the charged conspiracy and was evidence of an overt act showing an agreement between the conspirators to carry out some illegal act (assault and battery) if the victim did not do as he was instructed. As such, we find that evidence of the Sunday night incident was not uncharged misconduct evidence, but instead was admissible as "an inseparable part of the whole deed." *Hopkinson v. State*, 632 P.2d 79, 127 (Wyo.1981). Accordingly, we find that the admission of this evidence did not result in a transgression of a clear and

unequivocal rule of law, meaning plain error did not occur.

### Did the district court abuse its discretion when it admitted into evidence a 911 recording under W.R.E. 801(d)(1)(B)?

[¶ 12] The appellant next argues that the district court abused its discretion when it admitted into evidence a 911 recording as a prior consistent statement under W.R.E. 801(d)(1)(B). We review alleged errors relating to the admission of evidence for an abuse of discretion. *Hutchinson v. Taft*, 2010 WY 5, ¶ 27, 222 P.3d 1250, 1257 (Wyo. 2010). "We will not disturb such rulings absent a clear abuse of discretion. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the district court could reasonably conclude as it did." *Id.*

[¶ 13] W.R.E. 801(d)(1)(B) provides:

(d) *Statements which are not hearsay.*—A statement is not hearsay if:

(1) Prior Statement by Witness.—The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. . . .

Regarding W.R.E. 801(d)(1)(B), we have held that

[f]our requirements must be satisfied before a prior consistent statement will be properly admissible: (1) The declarant testifies at trial; (2) the declarant is subject to cross-examination concerning the prior statement; (3) the prior statement is consistent with the declarant's trial testimony; and (4) the prior statement is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

*Tombroek v. State*, 2009 WY 126, ¶ 8, 217 P.3d 806, 810 (Wyo.2009) (quoting *Martin v. State*, 2007 WY 76, ¶ 26, 157 P.3d 923, 929 (Wyo.2007)). The appellant concedes that the State met its burden with regard to the first three requirements. Therefore, the

only issue before this Court is whether the fourth requirement—the prior statement is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive—was met. We have previously said that "[t]he charge of fabrication or improper motive need not come only as a specific allegation during cross-examination" and may be derived from the "thrust" of the defenses and testimony presented. *Lancaster v. State*, 2002 WY 45, ¶ 18, 43 P.3d 80, 89 (Wyo.2002). Further, we have said that "it is not necessarily error that the prior consistent statement was received in evidence before the allegation of fabrication or improper motive." *Lancaster*, 2002 WY 45, ¶ 18, 43 P.3d at 89.

[¶ 14] The proffered prior consistent statement in this case was a recorded 911 call made by the victim almost immediately after he jumped out of the window of the hotel room where he was beaten and held hostage. At trial and on appeal, the State asserted that the 911 call statements were admissible because there had been an implication by the appellant that the victim was fabricating his story, or that he could not remember the events accurately because he was using drugs and alcohol at the time. The appellant counters that he never alleged recent fabrication, but merely cross-examined the victim and tested his recollection of the events.

[¶ 15] Upon reviewing the record before us, especially the trial transcripts, we find the appellant's characterization more accurately reflects the parties' respective positions below. While the appellant did attack the victim's credibility generally, and also submitted evidence of his prior criminal convictions involving lying, the appellant did not,

either explicitly or implicitly, allege that the victim's testimony was the result of a recent fabrication or improper motive or influence.[4] "The focus of W.R.E. 801(d)(1)(B) is the use of a prior consistent statement as rehabilitation of a witness whose credibility has been impeached *in the particular manner described in the rule.*" *Lancaster*, 2002 WY 45, ¶ 15, 43 P.3d at 89 (emphasis added). A general attack on a witness's credibility, without a claim of motive, influence or recent fabrication, does not warrant admission of 801(d)(1)(B) evidence.

> Ordinarily, attacks suggesting untruthful disposition (bad character for truth or veracity), or some lack or defect in sensory or mental capacity, do *not* suggest fabrication, improper influence, or motive. Hence such attacks do not usually invite repair by consistent statement, and do not bring Fed.R.Evid. 801[ (d)(1) ](B) into play.

4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8.39, at 329–30 (3d ed.2007). (Emphasis in original.) Likewise, "[i]t has generally been held in state prosecutions that mere contradiction of a witness through the testimony of other witnesses or through attacks on the witness' reputation for truth or veracity are insufficient grounds for the admissibility of the witness' prior consistent statement." Debra T. Landis, Annotation, *Admissibility of impeached witness' prior consistent statement—modern state criminal cases*, 58 A.L.R.4th 1014, 1025 (1987).

[¶ 16] In this case, the appellant did not explicitly or implicitly claim that the victim's in-court testimony was a recent fabrication or the result of some improper motive or influence.[5] Without such a claim, the prior

---

4. During argument regarding the admissibility of the 911 statements, defense counsel stated:

   And we certainly never offered a recent fabrication or a motive to lie, we have never offered that, or an influence. Certainly we talked about drugs but someone coming to [the witness] and their story changing. I mean, we have never offered anything about that. We are not contending that the story changed, Your Honor.

5. In *Lancaster v. State*, 2002 WY 45, ¶ 22, 43 P.3d 80, 91 (Wyo.2002), we undertook a brief discussion concerning a party's contention that a prior

consistent statement may be admissible even when not offered to rebut one of the claims specified in 801(d)(1)(B). Although we concluded that the prior consistent statement was inadmissible in that case, we indicated that this Court had adopted a "rather broad interpretation of the use of prior consistent statements." *Id.* In a footnote, we then stated:

> Not all jurisdictions follow Wyoming's approach to this issue. Some courts contend that admitting prior consistent statements whenever a witness is subject to general impeachment has the effect of negating the re-

consistent statement in the 911 call did not fall within the purview of 801(d)(1)(B), and was therefore inadmissible hearsay.

### Was the 911 recording admissible under W.R.E. 802(2) as an excited utterance?

[¶ 17] Although we find that the 911 call should not have been admitted as a prior consistent statement, we may affirm a district court's decision on any legal ground appearing in the record. *Short v. State*, 2009 WY 52, ¶ 9, 205 P.3d 195, 198 (Wyo.2009); *Jones v. State*, 602 P.2d 378, 382 (Wyo.1979). Upon reviewing the record before us, we conclude that the 911 call was admissible under the "excited utterance" exception to the hearsay rule. This exception, found in W.R.E. 803(2), provides that statements are not excluded by the hearsay rule if they relate "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

> The exception is founded upon the proposition that a statement made during the stress of excitement resulting from a startling event is probably trustworthy, since there is not leisure to reflect, contrive or fabricate. The rule assumes the presence of a startling event which temporarily stills the senses and alleviates any motive to fabricate.

*Boykin v. State*, 2005 WY 15, ¶ 7, 105 P.3d 481, 483 (Wyo.2005) (quoting *Oldman v. State*, 998 P.2d 957, 961 (Wyo.2000)) (citations omitted in original).

> This Court has identified five factors to be considered in determining the admissibility of evidence under the excited utterance

exception: (1) the nature of the startling event; (2) the declarant's physical manifestation of excitement; (3) the declarant's age; (4) the lapse of time between the event and the hearsay statement; and (5) whether the statement was made in response to an inquiry. *Boykin*, ¶ 8, 105 P.3d at 483. The ultimate inquiry is whether the "declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation." *Id.* (quoting *James v. State*, 888 P.2d 200, 206 (Wyo.1994)).

*Sanchez v. State*, 2011 WY 77, ¶ 22, 253 P.3d 136, 143 (Wyo.2011).

[¶ 18] In the present case, each of the factors weighs in favor of admissibility. After being severely beaten, the witness jumped out of a hotel room window, ran to the hotel office, and yelled to the front desk employee to call 911. The witness described his actions as follows:

Q. Did you suffer any injuries to the best of your knowledge from the jump itself?

A. No. No. I mean my adrenalin was going. I mean, I landed and ran—I ran straight for the office.

. . . .

Q. And what did you do once you got in the office?

A. I told the clerk he needed to call 911, somebody was trying to kill me and locked myself in the manager's office.

The front desk employee, whose testimony was admitted without objection, gave a similar account of the events of that night:

---

quirement for an allegation of recent fabrication or improper motive. *See Keller v. State*, 586 So.2d 1258, 1259–60 (Fla.App.1991); *State v. Mensing*, 297 Mont. 172, 991 P.2d 950, 953 (1999); and Annotation, *supra*, 58 A.L.R.4th 1014 at 1029–35. Absent an allegation of recent fabrication or improper motive, admitting prior consistent statements merely bolsters the witness's in-court testimony. *Fields v. Com.*, 12 S.W.3d 275, 280 (Ky.2000). Such statements are self-serving and cumulative. *Harris v. State*, 339 Ark. 35, 2 S.W.3d 768, 770 (1999). Trial by re-enactment could result. *Pickren v. State*, 269 Ga. 453, 500 S.E.2d 566, 570 (1998). *Id.* at ¶ 22 n. 7, at 91 n. 7, 43 P.3d 80. Wyoming does interpret 801(d)(1)(B) more broadly than its

federal counterpart in that it allows the admission of prior consistent statement even if made after the identified motive, influence or charge of fabrication. *Beartusk v. State*, 6 P.3d 138, 145 (Wyo.2000). Additionally, we allow admission of prior consistent statements at trial prior to, but in anticipation of, an opposing party's impeachment of the witness by alleging improper motive, influence or fabrication. *Humphrey v. State*, 962 P.2d 866, 872 (Wyo.1998). However, we have never held that an 801(d)(1)(B) prior consistent statement is admissible where no charge of recent fabrication, improper motive or influence is made at all. Any suggestion in *Lancaster* to the contrary is *dicta* and inconsistent with the plain language of the rule and our precedent.

Q. All right. And do you recall being asked to contact the 911number [sic] that night?

A. Yes, sir.

Q. All right. And how did that come about?

A. At that time there was this person who rushed into the front desk. He had no—he had no shirt, and he was only wearing his pants, and he rushed in. And he is yelling, help. And he rushed into my boss's office.

Q. And what did he do in there?

A. So I rushed in, and told him to get out of that office, or I am going to call the police.

Q. Did he reply?

A. Yes, sir. He said, yes, call the police, someone [sic] trying to kill me and my mom.

. . . .

Q. Now, you have described his appearance. You said he was bloody?

A. Yes, sir.

Q. Where on his body was he bloody?

A. His nose. I saw some blood on his nose and in his mouth. There was some blood coming out of his mouth, and all over, like maybe he wiped it from. So and also see, I also wiped some blood from my boss's office from the metal—was that—cabinets, so it is all over his body.

[¶ 19] The first and second elements, relating to the shocking or startling nature of the event and the declarant's physical manifestation of excitement, favor admission. In applying these two elements, we look to a factually similar case. In *Kelly v. State*, 694 P.2d 126 (Wyo.1985), the defendant engaged in a physical altercation with his girlfriend. *Id.* at 129. A friend attempted to intervene and the defendant began assaulting the friend. *Id.* The girlfriend ran to a neighbor's house and called the police. *Id.* At trial, the neighbor repeated statements made by the girlfriend regarding the incident. *Id.* at 129–30. The defendant objected, arguing that the statements were hearsay. *Id.* On appeal, we found that the statements satisfied the "excited utterance" exception to the hearsay rule inasmuch as the girlfriend had just

witnessed, and been involved in, a violent scene, and that the statements were made after she "ran screaming across the street 'bursting' into her neighbor's residence...." *Id.* at 130. In the present case, after the victim had been severely beaten and had jumped out a hotel room window, he rushed into the hotel lobby yelling "help," locked himself in the office, and told the clerk people were trying to kill him. In light of our holding in *Kelly*, it is clear that these facts favor admission under the first two factors listed above.

[¶ 20] The third factor, the victim's age, is neutral in these circumstances. The fourth factor, the lapse between the event and the hearsay statement, favors admission. Although the record does not reflect the exact time between the startling event (being beaten and subsequent escape from the hotel room) and the statement, it is not disputed that the appellant went directly to the office, told the clerk that people were trying to kill him, and asked the clerk to call 911. We find this to be a short enough time period that the victim's statements were spontaneous, excited or impulsive and not the product of reflection and deliberation. *See Sanchez*, 2011 WY 77, ¶ 23, 253 P.3d at 143 (still under stress of excitement approximately one hour after being severely beaten); *Streitmatter v. State*, 981 P.2d 921, 927 (Wyo.1999) (under stress of excitement 45 minutes after startling event); *United States v. Iron Shell*, 633 F.2d 77, 86 (8th Cir.1980) (under the stress of excitement 45 to 75 minutes after startling event).

[¶ 21] Finally, to address the fifth factor, we must determine whether the victim's statements were in response to an inquiry. Although the 911 operator asked the victim questions, it was the victim who initiated the statements. The fact that some of his statements were "responses" to the 911 operator's inquiries is not sufficient, under these circumstances, to take the statement outside the excited utterance exception. *See Boykin*, 2005 WY 15, ¶ 10, 105 P.3d at 484 (excited utterance admissible even though made in response to question, "Are you all right?").

[¶ 22] We conclude that the victim's statements here fall within the requirements

of the "excited utterance" exception of W.R.E. 803(2). Therefore, we find that they were properly admitted into evidence.

## CONCLUSION

[¶ 23]  The evidence of the Sunday night incident when the appellant and two others threatened the victim at knifepoint was not uncharged misconduct evidence inasmuch as it was direct evidence of the conspiracy crime charged.  The victim's 911 call statements were improperly admitted as prior consistent statements under W.R.E. 801(d)(1)(B) because they were not offered to rebut a recent charge of fabrication, improper motive or influence.  However, the 911 call statements were properly admissible as an excited utterance under W.R.E. 803(2).

[¶ 24]  Affirmed.