# IN THE SUPREME COURT, STATE OF WYOMING

# 2013 WY 139

OCTOBER TERM, A.D. 2013

*November 8, 2013*

JEREMIAH D. LEACH,

**Appellant**
**(Defendant),**

**v.**

**THE STATE OF WYOMING,**

**Appellee**
**(Plaintiff).**

S-13-0009

*Appeal from the District Court of Uinta County*
*The Honorable Dennis L. Sanderson, Judge*

*Representing Appellant:*
    Nathan W. Jeppsen, Law Offices of Nathan W. Jeppsen, APC, Rock Springs, Wyoming

*Representing Appellee:*
    Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jeffrey Pope, Assistant Attorney General.  Argument by Mr. Pope.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    A Uinta County jury found Appellant Jeremiah Leach guilty of first degree sexual assault on a physically helpless woman.  He contends that the district court erred in admitting statements he made to police, and that certain statements made by the prosecuting attorney in rebuttal closing argument were improper and prejudicial.  We find no error and therefore affirm.

## ISSUES

[¶2]    Leach raises two issues, which we condense as follows:

> 1.    Did the district court abuse its discretion in admitting Leach's statements to police?
>
> 2.    Did the prosecutor improperly refer to facts not in evidence during his closing argument?

## FACTS

[¶3]    In the early morning hours of June 28, 2011, Evanston police officers responded to a neighbor's report of a disturbance at LT's home.  The sobbing and hysterical LT woke her son while searching for a gun, and when she went outside and he tried to calm her, she told him, loudly enough for the reporting neighbor to hear, that she had been raped.

[¶4]    LT later testified that she returned to Evanston from visiting her boyfriend in Denver on June 27.  She took her sons to dinner, and later had two beers with two female friends.  After leaving her friends, she went to another bar and consumed three more beers and three Jägermeister and Red Bull cocktails.  At approximately 1:30 a.m., she went to the Painted Lady, where she had another beer and another "Jäger bomb" and ran into Leach, who was an old friend of one of LT's former boyfriends.  When the bar closed, Leach asked her for a ride home.

[¶5]    She agreed, and when they arrived, she accepted Leach's invitation to come inside for a drink of Hot Damn cinnamon schnapps.  Shortly after drinking it, she began to feel nauseas and dizzy.  LT is diabetic, and she believed she had consumed too much alcohol and was suffering from both intoxication and elevated blood-sugar levels.  She asked Leach if she could lie down until she felt capable of driving, and he ushered her into what he characterized as a spare bedroom.  He then left the room, and LT removed her jean shorts, turned off the light, and fell asleep on a mattress on the floor.

[¶6]    She awoke to a sharp jabbing pain caused by Leach anally penetrating her.  When he failed to stop as she asked, LT began struggling with him and eventually succeeded in

1

disengaging and pushing him off the mattress. She angrily and hysterically berated him as she retreated to a nearby bathroom, where she discovered that she was bleeding from her rectum and that her underpants were torn. She discarded her undergarment in a waste can, wiped the blood off of herself with toilet paper, and stuffed more into her jean shorts as she put them on. She then went to her car and drove home, where she removed the toilet paper from her shorts and placed it in a trash can. When the police arrived to answer the call from her neighbor, she admitted having been raped after being confronted with her son's statement to that effect.

[¶7]    The investigating officers retrieved the blood-spotted toilet paper as evidence and took LT to Evanston Regional Hospital. Emergency room personnel collected biological evidence, and observed obvious emotional distress, bruising on her buttocks, and a small laceration on her anus. While at the hospital, LT was interviewed by an Evanston police detective. After the interview, the detective went to the home where Leach was staying.

[¶8]    Leach was awakened from a sound sleep by his landlord. He spoke to the detective, who recorded the interview. Leach first claimed that he did not know LT, that he came home drunk with "some people" the night before, and that he did not have sex with anyone that night. The detective arrested him based on the information provided by LT, and retrieved her panties, a bottle of Hot Damn schnapps, and the bedding on the mattress LT had described. As the detective placed him in a police car, Leach began asking questions, and ultimately told the detective that he did in fact know LT. He denied having sex with her on the night in question, but indicated that if he did, it was not "forceful."

[¶9]    Approximately a week later, after LT brought him the jean shorts she had worn on the night of the alleged assault, the detective obtained a warrant and collected a cheek swab from Leach for DNA testing. During this encounter, which was also recorded, Leach admitted having sex with LT, but again claimed that it "was not forcible."

[¶10] He was charged with alternative counts of first degree sexual assault under Wyoming Statute § 6-2-302. Count I of the Information charged him with using physical force to cause LT to submit to sexual intrusion, while Count II charged him with inflicting sexual intrusion while she was physically helpless. He pled not guilty and went to trial on September 19, 2012.

[¶11] In the State's case-in-chief, the prosecutor asked the detective to recount his conversations with Leach, which resulted in the following exchange:

> [DEFENSE COUNSEL]:  Your Honor, I'm going to raise an objection again for hearsay purposes. Unless – unless there's an admission coming in, it's hearsay and would be inadmissible.

2

THE COURT:  This is a statement –

[PROSECUTOR]:  A statement against interest, your Honor, by the Defendant.

THE COURT:  The objection is overruled.  You can go ahead.

Defense counsel renewed his hearsay objection when the prosecutor later sought permission to play recordings of the detective's initial interview with Leach and to hand out transcripts of those recordings to the jury.[1]  The district court again overruled the objection without further explanation.  These events serve as the basis for Leach's first issue on appeal.

[¶12]  The second issue concerns the State's rebuttal closing argument.  Leach called three witnesses.  One was a single man who owned and lived in the house where Leach was staying.  The other two were a husband and wife who also lived in that house.  The woman testified that neither she nor her baby had been awakened by a disturbance on the night that LT was allegedly assaulted.  The two men testified that they had heard sounds like two people participating in a consensual sexual encounter, but that they did not hear an angry disturbance like that described by LT.  The defense also elicited testimony that the owner of the house was a single father who intended to rent only to other single fathers, and that it was not supposed to be a flop house "for [men] whoring around with women."

[¶13]  The prosecutor attempted to show that the owner of the house had a motive to deny that he heard LT's complaints after Leach had sexually assaulted her in his home:

> Q: And you have children from a previous relationship?
>
> A: Sure.
>
> .  .  .
>
> Q: You just said that you had kind of set it up as a home for single fathers to raise their children?
>
> A: I believe it was an understanding between us that that's what it's going to be. You bet.

---

[1] The jury was only allowed to use the transcripts to follow along with the recordings.  They were then collected, and were not available during deliberations.

Q: You deeply care for your children?

A: Without a doubt.

Q: And you have had trouble with custody disputes over those children?

A: Correct.

[DEFENSE COUNSEL]: Objection, relevance.

THE COURT: Sustained.

[¶14] The prosecuting attorney asked for a bench conference, at which he explained that he offered the evidence to show that the witness had a motive to be less than truthful because he might have further custody problems if the mother of his children learned that a woman had been sexually assaulted in his home, particularly if he knew about it and did nothing. The district court sustained the objection because in its opinion the relevance of the evidence was slight and tenuous when balanced against its capacity to distract the jury. Leach's attorney did not move to strike the answer or answers the owner had given, or to have the jury instructed to disregard them. The record therefore contains the questions and answers listed above with no indication that the jury was told that it could not consider them.

[¶15] Leach's counsel argued in closing that the owner of the home was sober through the entire time that LT was in the house. He emphasized that the man was concerned about Leach entertaining a female guest while his children slept upstairs, that he left his door open so he could hear what the two were doing, that he admonished Leach and LT to be quiet when they became noisy while talking in the living room, and that he was unable to sleep for some time and continued to listen. Despite that level of attention, he only heard sounds he associated with consensual sex, and did not hear the confrontation LT described in her testimony.

[¶16] In rebuttal, the prosecutor commented that "[t]hese committed fathers cannot – cannot – afford to let it be proven that a sexual assault by their roommate in their home took place and they did nothing." Leach did not object when that argument was made.

[¶17] The case was duly submitted to the jury, which after nine hours of deliberation notified the court that it was at an impasse. After taking a recess for the evening, the court gave Wyoming Criminal Pattern Jury Instruction 3.01, which encouraged the jurors to reach agreement. Neither counsel objected.

[¶18]  After the supplemental instruction was given, the jury arrived at a verdict which acquitted Leach on Count I, the charge of forcible sexual assault, but found him guilty on Count II, the charge of sexual intrusion upon a physically helpless person.  He was sentenced to not less than seven nor more than twenty-two years confinement.  This appeal was timely perfected.

## DISCUSSION

**Leach's Statements to the Detective**

[¶19]  Leach argues that the district court abused its discretion by admitting the statements he made to the detective.  He contends that the court admitted them under W.R.E. 804(b)(3), the "statement against interest" exception to the hearsay rule.[2]  This Court reviews rulings admitting evidence for an abuse of discretion, and we will not disturb such a ruling so long as the district court had a legitimate basis for it and could reasonably conclude as it did.  *Marquess v. State*, 2011 WY 95, ¶ 12, 256 P.3d 506, 510 (Wyo. 2011).  In applying that standard, we can affirm on any legal ground appearing in the record.  *Id.* at ¶ 17, 256 P.3d at 512.

[¶20]  As the excerpt quoted above shows, the objection posed by Leach's attorney acknowledged that if the statements made by his client were admissions, they could be received.  The court got no further than saying or beginning to ask "[t]his is a statement–" when the prosecutor interrupted to argue that Leach's utterances were statements against his interest under W.R.E. 804(b)(3).  With the jury presumably listening attentively, the district judge simply overruled the objection without explanation.

[¶21]  The State concedes that Leach's statements to law enforcement were not statements against interest under Rule 804(b)(3) because they were exculpatory.  However, it correctly points out that the statements were not hearsay at all.  An out-of-court statement by a party-opponent is excluded from the definition of hearsay in Rule. 801:

> The following definitions apply under this article [Article 8 of the Rules]:

---

[2] Wyoming Rule of Evidence 804(b)(3) provides an exception to the hearsay rule when the declarant is unavailable for "[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." W.R.E. 804(b)(3).

(a) *Statement*. – A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.

(b) *Declarant*. – A "declarant" is a person who makes a statement.

(c) *Hearsay*. – "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

**(d) *Statements Which Are Not Hearsay*. – A statement is not hearsay if:**

.   .   .

(2) Admission by Party-Opponent. – **The statement is offered against a party and is (A) his own statement**, in either his individual or a representative capacity . . . .

W.R.E. 801 (emphasis added).

[¶22]  The detective was asked to testify to the oral assertions that Leach volunteered or made in response to questioning.  Leach was undoubtedly a party-opponent in the criminal prosecution, and the prosecutor offered his statement to show that his version of the events of the night in question changed as time passed, arguably indicating consciousness of guilt or an effort to tailor his story to fit the facts law enforcement developed.  Although the prosecutor referred to the wrong rule when he argued the objection, the statements fit squarely within the definition of an admission of a party-opponent under Rule 801.

[¶23]  Leach appears to believe that a statement by a party-opponent is only an admission if it admits or confesses a crime, or at least some part of one.  A criminal defendant's statement qualifies as an admission under Rule 801(d)(2)(A) and is not hearsay regardless of whether it was against his interest at the time he made it or whether it "admits" anything in the conventional sense of that word.  The separate Rule 804 hearsay exception for statements against interest does not apply in any way to admissions under Rule 801.  4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:44 (3d ed. 2007) (speaking of the comparable federal rule); Kristine C. Karnezis, Annotation, *Admissibility of Party's Own Statement Under Rule 801(d)(2)(A) of the Federal Rules of Evidence*, 191 A.L.R. Fed. 27, § 13[a] (2003).  Confusing admissions with statements

against interest is sufficiently common that a 2011 amendment to Federal Rule of Evidence 801(d)(2)(a) replaced the word "admission" with "opposing party's statement":

> Statements falling under the hearsay exclusion provided by Rule 801(d)(2) are no longer referred to as "admissions" in the title to the subdivision. The term "admissions" is confusing because not all statements covered by the exclusion are admissions in the colloquial sense – a statement can be within the exclusion even if it "admitted" nothing and was not against the party's interest when made. The term "admissions" also raises confusion in comparison with the Rule 804(b)(3) exception for declarations against interest. No change in application of the exclusion is intended.

Fed. R. Evid. 801 advisory committee's note for 2011 amendment.[3]

[¶24] We do not suggest that all admissions by a party-opponent are admissible. They may be irrelevant under W.R.E. 401, or inadmissible for reasons set forth in W.R.E. 403 or other provisions of the rules. They may also be excluded if they were obtained in violation of the Fifth or Sixth Amendment to the United States Constitution or the parallel provisions of the Wyoming Constitution. None of these reasons for exclusion are raised by this appeal.

[¶25] We are quite confident that the experienced judge presiding over this trial fully understood the applicable rule of evidence and simply felt it unnecessary to comment further. The record justifies the admission of Leach's statements, and the trial court did not err in allowing the jury to hear them.

**The Prosecutor's Closing Argument**

[¶26] Leach contends that the prosecutor was guilty of misconduct because he argued facts not in evidence during his rebuttal closing. Because he failed to object to the prosecutor's argument, this Court must review his claim under the plain error standard. Under that standard, he must show that the facts said to constitute the alleged error are clearly reflected in the record, that the prosecutor violated an unequivocal rule of law in a clear and obvious and not merely arguable way, and that there is a reasonable possibility that, absent the alleged misconduct, the outcome of his trial would have been more favorable to him. *Grady v. State,* 2008 WY 144, ¶ 35, 197 P.3d 722, 733 (Wyo. 2008). We conclude that Leach cannot show that the prosecutor argued facts not in evidence, meaning that there was no error of law.

---

[3] Wyoming has not updated Rule 801 to conform to the new federal rule, but has instead retained the rule as it existed before the amendment.

[¶27]  As already discussed, Leach's counsel called the owner of the house in which he was living at the time he was accused of assaulting LT.  As the excerpt quoted above demonstrates, the prosecutor asked the owner in cross-examination if he had been involved in "custody disputes" relating to those children, and he acknowledged that he had.  Leach objected after the question was answered, and the district court sustained that objection.  In rebuttal, the prosecutor argued in essence that the witness was biased because he could not afford to have a rape he did nothing to prevent occur in his house if he wanted to continue to have custody of his children.

[¶28]  Leach's argument assumes that the trial court's decision to sustain his objection excluded the witness's response from the record and the jury's consideration, which he claims would make the argument concerning the owner's potential bias improper because it referred to something not in the record.

[¶29]  Wyoming Rule of Evidence 103 provides in pertinent part as follows:

> (a) *Effect of Erroneous Ruling*. – Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> (1) Objection. – In case the ruling is one admitting evidence, a timely objection **or motion to strike appears of record**, stating the specific ground of objection, if the specific ground was not apparent from the context; or
>
> (2) Offer of Proof. – In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

W.R.E. 103 (emphasis added).

[¶30]  The rule describes three of the most important tools in the trial lawyer's toolbox: the objection, the motion to strike, and the offer of proof.  As Mueller and Kirkpatrick explain in their treatise:

> In appropriate cases, a motion to strike is as essential under Fed. R. Evid. 103 as an objection in preserving rights to argue error in admitting evidence. In substance, a motion to strike is a delayed objection. A party is not always entitled to a delay, but can make a motion to strike if the court admits evidence provisionally or conditionally and if it later appears that it

8

should not come in, or if the evidence comes in so quickly that there was not time for an advance objection. In such cases the adverse party must move to strike or lose the objection.

1 Mueller & Kirkpatrick, *supra*, § 1:6 (footnotes omitted). Wyoming Rule of Evidence 103 is substantially similar to Federal Rule of Evidence 103, with only minor organizational differences. When federal rules are virtually identical to their Wyoming counterparts, federal case law interpreting them is persuasive. *Bromley v. State*, 2009 WY 133, ¶ 18, 219 P.3d 110, 115 (Wyo. 2009) (citing *Walters v. State*, 2008 WY 159, ¶ 13, 197 P.3d 1273, 1277 (Wyo. 2008)).

[¶31] It follows that sustaining an objection has the effect claimed by Leach only if the objection was posed after the question was asked and before it was answered. 1 Mueller & Kirkpatrick, *supra*, § 1:7. If counsel objects only after a question is answered, even though the objection is sustained, he or she must move to strike and ask that the jury be instructed to disregard the answer or answers to preserve a claim of error. *Id.* at § 1:5; 75 Am. Jur. 2d *Trial* § 392 (2007). Even when a question has been answered so quickly that counsel cannot interpose a timely objection, if there is no motion to strike, the question and answer remain part of the record. They may therefore be considered by the fact finder and are a proper subject for closing argument. 1 Mueller & Kirkpatrick, *supra*, § 1:6; *United States v. Mitchell*, 613 F.2d 779, 782 (10th Cir. 1980).

[¶32] We fully understand that evidentiary issues arise quickly in the courtroom, and that there are legitimate reasons that counsel cannot make objections before the jury hears testimony that should not be admitted. Witnesses blurt out answers before counsel can object. They offer non-responsive and improper answers to proper questions. Sometimes interrogating counsel's objective is not apparent until several questions have been asked and answered. However, without a motion to strike and an instruction for the jury to disregard it, the improper testimony remains in the record, and the jury has no idea that it cannot consider it.

[¶33] We do not believe that the State's rebuttal argument would have been improper even if the ruling on the objection had been sufficient to strike the question concerning custody from the record. Defense counsel argued in closing that the owner of the home had no reason to lie, and emphasized his role as a single parent concerned for his children. The prosecuting attorney simply pointed out that the witnesses might have a reason to be untruthful, because a finding that a sexual assault occurred in a house where the children lived could be damaging in a custody dispute. A prosecutor is entitled to reflect upon the evidence, and to ask the jury to draw reasonable inferences from it. *Belden v. State*, 2003 WY 89, ¶ 48, 73 P.3d 1041, 1089 (Wyo. 2003). That is all the prosecutor in this case did. He did not therefore violate a rule of law.

## CONCLUSION

[¶34] The district court properly admitted Leach's statements to the police, and the prosecutor did not improperly argue facts not in evidence in rebuttal closing. The Judgment and Sentence Nunc Pro Tunc of the District Court for the Third Judicial District is therefore affirmed.